# Richmond

BAKER JUNIOR WOODEN v. COMMONWEALTH OF VIRGINIA.

March 4, 1968.

Record No. 6573.

Present, Eggleston, C.J., Buchanan, Snead, I'Anson, Gordon and Harrison, JJ.

*Thomas J. Middleton* (*LaRue Van Meter*, on brief), for plaintiff in error.

*M. Harris Parker, Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for defendant in error.

GORDON, J., delivered the opinion of the court.

Baker Junior Wooden appeals from an order entered November 20, 1964[1] that sentenced him to thirty years in the penitentiary in

---

[1] By order entered June 15, 1966, we permitted Wooden to apply for a writ of

accordance with a jury verdict finding him guilty of first degree murder and fixing his term of imprisonment.

The relevant facts, stated in the light most favorable to the Commonwealth, are these:

On July 30, 1964 Wooden, George Adams and two other men agreed that they would "knock over" Meyers' market in Oakton, Virginia. Shortly before 4:00 p.m. these four men, accompanied by Margaret Marie Settle and another woman, drove to Meyers' market and parked their car beside the building. Wooden went into the market, bought an orange soda, returned to the car and reported, "[c]ustomers in the store". Shortly thereafter either Wooden or Adams said "[l]et's go in". They left the car and walked around the corner of the market toward the front entrance. (Margaret Settle, who related these facts, could not say whether Wooden and Adams went into the market because she could not see the entrance.)

At that time only the proprietor, Hyman Meyers, and the butcher, J. L. Hopkins, were in the market. Meyers was at the cash register near the front of the market, and Hopkins was near the back of the market. Hopkins heard Meyers "holler" and called to ask what was happening. Meyers answered, "[h]e pistol whipped me". Hopkins then saw Adams coming out from behind the cash register. Adams proceeded towards Hopkins and struck him twice, once with his fist and once with a soda bottle. After Hopkins recovered he picked up a meat cleaver. Adams then "took off".

The proprietor's wife, who was upstairs over the market, heard "noise" downstairs. Mrs. Meyers called to her husband and, receiving no answer, ran down the steps. She saw her husband "all bloody", "running up and down outside hollering for help". Mrs. Meyers saw Adams at the cash register "taking money", and she saw Hopkins coming from the back of the store with the cleaver in his hand.

Neither Hopkins nor Mrs. Meyers saw Wooden in the market. But during the early morning of July 31 Wooden admitted to a detective that he had entered the market after Adams beckoned to him from within, and that he had seen Meyers and Adams "struggling".

Meyers died from the wound inflicted by Adams.

Counsel does not contend, nor could he successfully contend, that the evidence was insufficient to convict Wooden of first degree

---

error to the November 20, 1964 order, even though the time prescribed by statute and our Rules had expired. By order entered January 11, 1967 we awarded a writ of error.

murder.[2] He does contend that the trial court erred (1) in permitting the Commonwealth to introduce into evidence Wooden's admissions to the detective, and (2) in refusing to instruct the jury that it could find Wooden guilty of second degree murder.

## (1)

[1] At Wooden's trial the attorney for the Commonwealth asked detective Alvin L. Sanders to relate what Wooden had told him at police headquarters during the early morning of July 31. The court then heard the testimony of Sanders and Wooden, out of the presence of the jury, to determine whether Wooden had made the alleged statements to Sanders voluntarily.

Sanders testified that, before questioning Wooden, he advised him of his rights. Sanders said he told Wooden that Wooden did not have to make any statement unless he wished to, that any statement Wooden made could be used for or against him in a court of law, and that Wooden could seek legal counsel if he so desired. Sanders said that Wooden told him "he [Wooden] wanted to talk to his lawyer before he signed a statement". But according to Sanders, Wooden proceeded, without any threat or inducement having been made to relate his version of the events of July 30.

Wooden, also testifying out of the presence of the jury, said in effect that Sanders did not advise him of his rights; that Sanders only asked him whether he wanted to make a statement. When asked specifically whether Sanders told him he could see an attorney, Wooden replied: "No, sir, wasn't an attorney were mentioned". Wooden said that he first told Sanders he did not wish to give a statement, but that later he told Sanders what had happened after Sanders had promised: "If you go on and cooperate with me, I [Sanders] can help you".

The trial court ruled the statements voluntary and admissible in evidence.[3] The jury was then recalled, and Sanders repeated in sub-

---

[2] A killing during the commission of a robbery is murder in the first degree. Va. Code. Ann. § 18.1-21 (Supp. 1966). A principal in the second degree may be indicted, tried, convicted and punished in all respects as if a principal in the first degree. Va. Code Ann. § 18.1-11 (Repl. vol. 1960).

[3] Virginia follows the Wigmore or orthodox rule. The judge hears testimony offered by the prosecution and the defendant, out of the presence of the jury, and then rules the confession voluntary or involuntary. If he rules the confession voluntary, it is admitted into evidence and the jury considers voluntariness only insofar as it affects the weight or credibility of the confession. *Mathews* v. *Commonwealth*, 207 Va. 915, 918-19, 153 S. E.2d 238, 240 (1967); see *Jackson* v. *Denno*, 378

stance his testimony concerning Wooden's admissions to him on July 31.[4] Sanders said Wooden admitted that before he and the five other persons drove to Meyers' market, he had "overheard part of a conversation in regards to a robbery" and later there had been "more discussion of this robbery". (In the statement, as recounted by Sanders, Wooden did not identify the other persons who talked about the proposed robbery.) Sanders said Wooden also admitted that he had entered the market after Adams beckoned to him from within, and that he had seen Meyers and Adams "struggling".

Counsel contends that Wooden's oral admissions, as related by Sanders, were inadmissible because Wooden "did not knowingly and intelligently waive his privilege against self-incrimination and his right to assistance of counsel". Pointing to Sanders' testimony that Wooden said "he wanted to talk to his lawyer before he signed a statement", counsel argues:

> "It is clear that the defendant understood that counsel could be helpful to him and that he desired the assistance of counsel before doing anything that would place him in jeopardy. The interrogating officer knew, or ought to have known, that the defendant did not understand his constitutional right against self-incrimination and did not know that verbal statements are as damaging as written statements. Yet after being told by the defendant that he wanted to talk to his lawyer before he signed a statement, Detective Sanders responded with continued interrogation and induced the defendant to make verbal admissions which the trial court held to be voluntary and admissible. It is evident that this form of interrogation was adopted by the police solely to obtain a confession."

Wooden's testimony does not support counsel's contention "that the defendant understood that counsel could be helpful to him and that he desired the assistance of counsel before doing anything that

---

U.S. 368, 411, 414, 84 S.Ct. 1774, 1799, 1800, 12 L.ed.2d 908, 936, 937 (1964) (appendix to separate opinion by Black, J.). The same procedure is followed with respect to admissions that do not constitute confessions of guilt.

At oral argument, Wooden's counsel conceded that after hearing testimony out of the presence of the jury, the trial judge ruled Wooden's statements voluntary and admissible.

[4] When Sanders testified out of the presence of the jury, he said that Wooden had told him "he wanted to talk to his lawyer before he signed a statement". When he testified before the jury, Sanders said: "[H]e [Wooden] stated that he did not want counsel. He would not sign a statement. He would say verbally what had happened on July 30th."

would place him in jeopardy". Wooden did not testify that he had told Sanders he desired the assistance of counsel. The clear inference from his testimony is that he was ignorant of any right to remain silent and to consult counsel because Sanders gave him no advice about his rights. Significantly, when Wooden was asked whether Sanders had told him he could see an attorney, he replied: "No, sir, wasn't an attorney were mentioned".

Wooden did not even intimate in his testimony, moreover, that he had made oral statements to Sanders under the belief that only written statements could be used against him. Wooden said Sanders' promise to help him, if he would cooperate, had prompted him to make the statements. Sanders testified that he had advised Wooden of his rights, specifically that *any* statement could be used for or against Wooden in a court of law; and that he had made no threat or inducement. The trial judge believed Sanders' testimony and rejected Wooden's.

It was the judge's province to determine whether the statements were voluntary and therefore admissible for consideration by the jury. Since his factual finding is supported by the evidence, it is conclusive.

Wooden's counsel concedes that *Miranda* v. *Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.ed.2d 694 (1966), is not applicable because Wooden's trial began in November 1964, before the *Miranda* decision. See *Johnson* v. *New Jersey*, 384 U.S. 7.19, 86 S.Ct. 1772, 16 L.ed. 2d 882 (1966). Counsel contends, however, that Wooden was denied "his constitutional right to assistance of counsel and his privilege against self-incrimination" under the pre-*Miranda* rules.

Counsel relies upon *Escobedo* v. *Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.ed.2d 977 (1964), which held a confession inadmissible because the accused had been denied his Sixth Amendment right to counsel. But, as the Supreme Court has made clear, an essential ingredient in the *Escobedo* holding was the fact that Escobedo, before he made the confession, had requested and been denied an opportunity to consult with his lawyer. *Johnson* v. *New Jersey*, *supra* at 733-34, 86 S.Ct. at 1781, 16 L.ed.2d at 892. That ingredient is missing in this case since Wooden did not request an opportunity to consult with a lawyer before he made the oral statements that were subsequently admitted as evidence.

Wooden's counsel quotes the following excerpt from a footnote in the *Miranda* opinion, which summarizes the pre-*Miranda* rules:

"The decisions of this Court have guaranteed the same procedural protection for the defendant whether his confession was used in a federal or state court. It is now axiomatic that the defendant's constitutional rights have been violated if his conviction is based, in whole or in part, on an involuntary confession, regardless of its truth or falsity. [Citing cases] This is so even if there is ample evidence aside from the confession to support the conviction [citing cases]." *Miranda* v. *Arizona, supra* at 464, 86 S.Ct. at 1622, 16 L.ed.2d at 717-18 (n. 33).

Under those rules Wooden was denied no constitutional right. The testimony heard out of the presence of the jury supported the trial judge's finding that Wooden's statements to Sanders were made voluntarily after he had been fully advised of his constitutional rights under the pre-*Miranda* rules. That finding is not inconsistent with the Virginia cases cited in Wooden's brief: *McCoy* v. *Commonwealth*, 206 Va. 470, 144 S.E.2d 303 (1965); *Belcher* v. *Commonwealth*, 160 Va. 891, 168 S.E. 468 (1933); *Cullen* v. *Commonwealth*, 65 Va. (24 Gratt.) 624 (1873).

## (2)

[2] The trial judge refused to grant an instruction that would have told the jury that every unlawful homicide is presumed to be murder in the second degree and that, in order to elevate an unlawful homicide to murder in the first degree, the Commonwealth has the burden of proving the elements of first degree murder. The court also refused instructions that defined, and set forth the permissible punishment for, murder in the second degree. Wooden's counsel assigns error to the refusal of those instructions.[5]

We hold that the trial court committed no error in refusing those instructions because the evidence did not support a finding that Wooden was guilty of second degree murder. Under the evidence the jury could have properly returned only one of two verdicts, guilty of first degree murder or not guilty.

---

[5] The proffered instructions, which were refused, also (i) would have told the jury that the burden is upon the defendant to reduce an unlawful homicide to manslaughter, and (ii) set forth the permissible punishments for voluntary and involuntary manslaughter. Counsel does not now press the contention that the court should have instructed the jury concerning manslaughter, as evidenced by his statement of the question presented by the court's refusal to grant the proffered instructions: "Did the Court err in refusing to instruct the Jury upon second degree murder and the consequences of a finding of second degree murder?" See *Thacker* v. *Commonwealth*, 207 Va. 962, 967, 154 S.E.2d 130, 133 (1967).

We have outlined the facts testified to by the Commonwealth's witnesses (*supra* page 630). If the jury believed those witnesses, it could only conclude that Adams killed Meyers during the commission of a robbery and that Wooden was a principal in the second degree. Such a conclusion could lead to only one verdict, guilty of murder in the first degree. See note 2 *supra*.

Wooden testified that he had heard no conversation or discussion about a robbery before he and Adams entered Meyers' market. He testified that he went into the market to buy cigarettes and soda, that he entered the market ahead of Adams and went to the soda counter, that Adams went to the counter "where Mr. Meyers was", and that he [Wooden] overheard Adams and Meyers "arguing about something". Then, Wooden testified, "I put the sodas back what I was going to get and I came out [of the market]". Wooden denied that he had made any statement to Sanders that conflicted with his testimony, as outlined in the three preceding sentences. If the jury believed Wooden's testimony it could have properly returned only one verdict, not guilty.

Wooden's counsel has pointed out that *Plymale* v. *Commonwealth*, 195 Va. 582, 79 S.E.2d 610 (1954), supports the giving of instructions in this case concerning murder in the second degree. Insofar as *Plymale* conflicts with our present holding, we overrule that case and adopt the views of the dissenting Justices. *Id*. at 601-02, 79 S.E.2d at 620-21.[6]

*Affirmed.*

---

[6] The Commonwealth contends that *Fuller* v. *Commonwealth*, 201 Va. 724, 113 S.E.2d 667 (1960), overruled *Plymale*. The record in *Fuller* shows, however, that the trial court gave instructions concerning murder in the second degree.