Everett Otis SHRADER, Petitioner,

v.

William M. RIDDLE, Superintendent,
Virginia State Penitentiary,
Respondent.

Civ. A. No. 75–0059.

United States District Court,
W. D. Virginia,
Roanoke Division.

Aug. 25, 1975.

Richard E. Carter, Charlottesville, Va., for petitioner.

Linwood T. Wells, Jr., Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, District Judge.

Petitioner, Everett Otis Shrader, has filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 attacking the validity of his conviction on August 16, 1973 in the Circuit Court of Giles County for first degree murder. He was sentenced to serve a life term in the Virginia State Penitentiary. He appealed his conviction to the Virginia Supreme Court, which by order dated

March 6, 1974 denied his petition for a writ of error and affirmed his conviction. This court has jurisdiction over this suit under 28 U.S.C. § 2241.

Petitioner alleges that the following grounds warrant relief:

1. Refusal by state trial court to change venue.

2. The manner of selection of the three hundred person jury list and the completion of the twenty person jury panel was unconstitutional.

3. Failure of the trial judge to disqualify himself after making prejudicial remarks at a hearing in January, 1973.

4. Refusal to grant a continuance on June 5, 1973 so that petitioner could obtain a transcript of the trial of petitioner's co-defendant held in November, 1972, or so that he could obtain a transcript of his hearing in January, 1973.

5. Refusal of the trial court to strike the testimony of Arnold Hagy, Robert Zimmer, Juanita Harville and Robert James Harville, all witnesses at petitioner's trial.

6. Refusal of the trial court to admit the testimony of Arthur Koch, petitioner's attorney at an earlier trial.

7. The decision of the trial court to give certain instructions and not to give others.

8. The evidence was insufficient for conviction.

9. The Sheriff of Giles County questioned petitioner for more than an hour before being advised of his rights.

10. Refusal of the trial court to sequester the jury.

11. The court allowed the use at trial of a privately retained special prosecutor.

The court is of the opinion that none of these grounds for relief state a claim which rises to the standard of being violative of the Constitution or laws of the United States.

■ Petitioner's motion for change of venue was made because of alleged adverse pre-trial publicity. Petitioner cites a number of instances in the trial transcript where potential jurors admitted at the voir dire that they had either read, heard, discussed, or formed an opinion about the case. For this reason, petitioner asserts that his motion should have been granted.

The finding of a trial court on the issue of the force of a prospective juror's opinion must be constitutionally deficient to warrant granting habeas corpus.

Jurors are not required to be totally ignorant of the facts and issues involved in a case. *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1960). Indeed one would expect that any resident of a sparsely populated area that reads the newspapers is likely to hear of an incident of such impact as a murder. To require a change of venue for this reason alone would be overly burdensome.

In those cases that reversed convictions for failure to uphold a request for a change of venue, the pattern of discrimination was clear from the voir dire and often resulted from a highly prejudicial well-publicized event such as an alleged confession that the party never made, *Irvin*, supra, or an attempted jail break that never occurred and a guilty plea that was withdrawn. *United States ex rel. Doggett v. Yeager*, 472 F.2d 229 (3rd. Cir. 1973).

In petitioner's case, all those on the jury panel who wound up serving on the jury stated that they hadn't formed a final opinion as to guilt or innocence. Those who sat in on the prior conviction of petitioner or had relatives involved were dismissed. At the most, this was a jury that was knowledgeable about events that occurred prior to trial, but was willing and able to give an impartial verdict should the prosecutor not meet his burden of proof. Such a jury is not constitutionally deficient.

■ Petitioner next charges that the three hundred person jury list was

improperly compiled by unqualified jury commissioners and the final twenty person jury panel was overbalanced with males who came from the county seat. Petitioner does not suggest any qualifications he would require of the jury commissioners. Indeed many states leave the discretion of choosing a jury list in a single individual's hands and absent any intentional exclusion of one segment of the community by this individual, the procedure is to be considered a fair one. *Fay v. New York*, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043 (1947).

The Constitution doesn't speak to the manner a state chooses in compiling its jury lists. It merely implies that the petit jury must be selected from a representative cross-section of the community. *Smith v. Texas*, 311 U.S. 128, 61 S. Ct. 164, 85 L.Ed. 84 (1940). The mere fact that the jury commissioners reduced the jury list to three hundred persons from which thirty-nine were summoned does not suggest systematic exclusion. Furthermore the fact that the final jury panel of twenty contained only three women and most of the twenty resided in the county seat is mere happenstance. The Constitution doesn't impose a requirement that the jury must actually mirror the community and reflect the various distinctive groups in the population. *Apodaca v. Oregon*, 406 U.S. 404, 413, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972).

In support of his motion, petitioner has cited various instances where racial discrimination was practiced by jury commissioners. *Witcher v. Peyton*, 405 F.2d 725 (4th Cir. 1969), *Peters v. Kiff*, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972). However there is no allegation of racial discrimination in the case at hand. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) which petitioner also cites in support of his motion doesn't guarantee proportionate representation of females on the petit jury according to their representation from the population at large from which

the particular jury is chosen. It merely voids an intervening law that caused the resulting all-male jury in that instance. Here there is no similar alleged attempt to keep women off of petitioner's jury. Since there is no proof other than the highly circumstantial evidence of the one set of figures applicable to petitioner's trial, systematic exclusion hasn't been demonstrated and this court finds no violation of petitioner's Sixth Amendment rights.

■ Petitioner next alleges that the trial judge should have disqualified himself because of remarks he made at a hearing on January 29, 1973 in which he said the defendant was obstructing justice by not cooperating with his court-appointed attorney. Such remarks fall far short of indicating prejudice that could affect the impartiality of a trial. It appears that the court-appointed counsel worked very diligently for defendant, but after the first trial was lost, defendant refused to cooperate at all with his counsel except to ask for a new attorney, which request was eventually allowed. This action on defendant's part did indeed delay the disposition of the second case and the judge's remarks concerning it are accurate and far from prejudicial. Furthermore a look at the trial transcript doesn't reveal any further evidence on which to base such a charge.

■ Defendant's next allegation concerns denial of continuances requested due to the unavailability of previous transcripts. This charge does not reach constitutional dimensions. Defendant was still afforded his rights of confrontation and cross-examination to challenge any of the witnesses he alleges changed their story at his second trial. Denial by the trial judge of this request was within his discretion and didn't amount to a violation of petitioner's rights to due process.

■ Petitioner's fifth argument is that the trial court erred in failing to strike the testimony of certain witness-

es. The first of these, Arnold Hagy, identified the petitioner as attempting to purchase gasoline in a container at the service station at which Hagy worked. Hagy's identification stemmed from a show-up at the police station at which petitioner was told he would be allowed to make a phone call and Hagy watched and listened as petitioner did so. When he had been previously asked by the police about the petitioner's activities at his gas station, Hagy had remembered a man trying to purchase gasoline who was very cordial but had not been able to identify petitioner from photographs taken of him. Petitioner asserts that this show-up procedure was unnecessarily suggestive and that a line-up should have been resorted to instead. Because this wasn't done, petitioner asserts Hagy's testimony ought to be stricken.

Unnecessary suggestiveness alone doesn't require the exclusion of evidence. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The central question is whether under the totality of the circumstances the trial judge didn't abuse his discretion in concluding that the identification was reliable.

This test goes beyond unnecessary suggestiveness and also considers whether the show-up is so conducive to irreparable mistaken identification as to deny the defendant fundamental fairness. *Stanley v. Cox,* 486 F.2d 48 (4th Cir. 1973). Among the factors to be considered in evaluating the likelihood of misidentification are the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of

attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Neil,* supra, 409 U.S. at 199, 93 S.Ct. 375.

Courts have varied as to what length of time is acceptable between the original incident and the confrontation. See *McRae v. United States,* 137 U.S.App.D. C. 80, 420 F.2d 1283 (1969) where 4 hours was held unacceptable, *United States v. Quarles,* 387 F.2d 551 (4th Cir. 1967), where six days was acceptable, and *United States ex rel. Carnegie v. MacDougall,* 422 F.2d 353 (2d Cir. 1970), *cert. denied,* 398 U.S. 912, 90 S. Ct. 1711, 26 L.Ed.2d 74, where three months was upheld. In the case at hand, Hagy couldn't remember the length of time. Transcript, June 6, 1973, p. 193. Petitioner's arrest didn't occur until six days after the crime and the show-up apparently occurred during the investigation of the case based on his accomplice's confession.

Beyond this deficiency though, other factors point to the fact that Hagy's identification was not based solely on the show-up. Hagy testified that it was Shrader's demeanor, attitude, and voice that enabled him to remember Shrader, even though he couldn't remember him from the photographs.[1] Hagy talked to Shrader at two different times, because Shrader left the station and later came back and purchased some oil. Each time he had an opportunity to view the petitioner and talk with him. Furthermore Hagy testified his identification didn't

---

1. On redirect examination the following exchange occurred:

 Q. Mr. Hagy, can you identify Everett Otis Shrader today?
 A. Yes, sir, over there.
 Q. That is the man that was in your service station?
 A. Yes, sir.

 Q. And you are positive of that identification?

 A. Yes, sir, cause like I say, he acted so nice about it and everybody had been giving me such a hard time and things over not giving them gas. I stopped and noticed him more. Transcript, June 6, 1973 pp. 192–193.

come from the show-up and he was positive of his identification.[2]

Weighing all these factors together, this court is of the opinion that there is an independent ground for the identification apart from the suggestiveness inherent in the show-up itself. The positive nature with which Hagy testified, the fact that the identification was based more on factors other than a facial identification, and the prolonged period in which Hagy's attention was with petitioner convinces this court of the validity of the identification apart from the show-up.

 Petitioner also complains that Hagy was unable to remember the month in which Shrader was at his station, and thus his testimony should have been stricken from the record. This allegation is unfounded. Hagy properly identified Shrader as attempting to purchase gasoline at his station and there is no requirement that he remember the precise time. This was a matter that could properly have been raised on cross-examination so the jury would know how much credence to give to Hagy's identification. Hagy's memory lapse then is an issue of credibility and doesn't rise to a constitutional level.

 Petitioner also complains about the precision of the testimony of Juanita and Robert Harville and the relevance of the testimony of Robert Zimmer. These also are matters of state law that don't reach constitutional dimensions. A federal court doesn't serve as a forum for challenging potential evidentiary mistakes that might be insufficient as a matter of state law. Habeas corpus reaches issues that are only so totally devoid of evidentiary support as to raise a due process issue. *Grundler v. North Carolina*, 283 F.2d 798 (4th Cir. 1969).

 For similar reasons, there is no constitutional error in the refusal by the trial court to admit evidence of petitioner's willingness to take a lie detector test. The decision by state courts to refuse to admit any evidence concerning polygraph examinations is clearly one that doesn't conflict with a defendant's rights to due process. For that matter, many state courts have reasoned that evidence of a defendant's willingness to submit to such a test is inadmissible. See 95 A.L.R.2d 822.

 Petitioner's seventh and eighth allegations concerning certain instructions to the jury and the insufficiency of the evidence are also not proper matters for federal habeas corpus absent a deprivation of due process. *Grundler*, supra at 801. More specifically petitioner had requested instructions be given on second degree murder, manslaughter, and assault and battery in addition to first degree murder but the court had refused his request.

The Virginia Supreme Court has ruled however that it is proper to give an instruction only as to first degree murder and not as to similar lesser offenses if the defense doesn't attempt to demonstrate that a lesser offense had been committed instead of the one charged. *Wooden v. Commonwealth*, 208 Va. 629, 159 S.E.2d 623 (1968). This application of state law to the facts of petitioner's case did not amount to a constitutional deprivation. The other two instructions complained of were simply similar to

---

2. On recross examination the following exchange occurred.

Q. Just one moment, Mr. Hagy, the reason you can identify him today is because you made a prior identification when he was talking on the phone here in the jail some months to a year ago.

A. Well, I remembered him before that because like I say it just seemed like there was something strange about him the night that he come over there when he was so nice.

Q. But you couldn't remember him well enough to identify his picture when they showed you his picture, could you?

A. Not until I could hear his voice and things together. It seemed like his voice just brought it out. He talked so nice and low. Transcript, June 6, 1973, p. 193.

cases approved by the Virginia Supreme Court, with a few words deleted. Whether such instructions were adequate was essentially a matter of state law and the actual wording of the instruction does not present an issue of constitutional dimensions. As to the insufficiency of the evidence claim, the sole constitutional question here is whether petitioner's conviction rests on any evidence at all, and a review of the entire transcript indicates substantial evidence. *Williams v. Peyton*, 414 F.2d 776 (4th Cir. 1969). Petitioner has suggested that conflicting testimony by witnesses at his first and second trials is perjury, but the instances of conflict pointed to all relate to collateral matters and may be explained by an expected lapse of memory over the six month period between the two trials. Such conflicts in testimony present issues of credibility and afford no basis for federal habeas corpus relief.

Petitioner's ninth allegation accuses the sheriff of improper tactics in interrogating the petitioner for an hour before advising him of his rights. Yet a study of the trial transcript reveals that no statement by the petitioner or evidence derived from the custodial interrogation was ever used against him. Petitioner's conviction rested on the direct testimony against him of his accomplice and the circumstantial evidence of numerous other witnesses that tended to tie him into the crime and corroborate his accomplice's testimony.

Furthermore it is clear from the trial transcript that petitioner was eventually given his warnings at which time he voluntarily signed a statement relinquishing them and then was interrogated. Of course all that *Miranda* guarantees is that no statements that are the product of custodial interrogation, whether exculpatory or inculpatory can be used against a suspect until he is warned of certain procedural safeguards. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). There being no indication of any such evidence here, this claim is without merit.

Petitioner next alleges that the trial judge ought to have sequestered the jury during the trial. Petitioner, himself, admits that this is a matter for the court's discretion. There is no demonstration of prejudicial effect on the jury and petitioner's failure to specify any such prejudice resulting from the judge's decision indicates that this claim is without constitutional significance.

Petitioner's final allegation is that the court should not have allowed the use at trial of a privately retained special prosecutor. Again, petitioner's own pleadings state that the prosecution is not being charged with conscious wrongdoing. It is the mere appearance that the prosecution was out to get a conviction that disturbs petitioner. A procedure such as this one, practiced infrequently in Virginia, has no constitutional shortcomings. Defendant was adequately represented by counsel. Any suggestion that this procedure is unethical and contrary to the prosecutor's role to do justice is not a question of fundamental fairness, but a matter for a state grievance committee on unethical practice.

In conclusion petitioner has failed to assert or prove a claim that would suggest he was denied a fair trial under constitutional requirements. Accordingly, petitioner's claim for habeas corpus is hereby denied.