**Linwood E. BRILEY,**
**Petitioner-Appellant,**

v.

**Gary L. BASS, Warden,**
**Respondent-Appellee.**

No. 84–6243.

United States Court of Appeals,
Fourth Circuit.

Argued Aug. 7, 1984.

Decided Aug. 23, 1984.

---

William H. Allen, Washington, D.C. (William E. O'Brian, Jr., Timothy C. Hester, Covington & Burling, Washington, D.C., Deborah C. Wyatt, Charlottesville, Va., on brief), for petitioner-appellant.

James E. Kulp, Sr. Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen., Richmond, Va., on brief), for respondent-appellee.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The petitioner in this habeas proceeding was convicted in a two-stage trial of capital murder and sentenced to death by a judge and jury in the Circuit Court for the City of Richmond, Virginia. He appealed the conviction and sentence to the Virginia Supreme Court, which affirmed the conviction and sentence.[1] Application for certiorari was denied by the United States Supreme

---

1. *Briley v. Commonwealth,* 221 Va. 532, 273 S.E.2d 48 (1980).

Court.[2] The petitioner sought post-conviction relief in the State trial court. That petition was denied by the State Circuit Court and, on appeal, the denial was affirmed by the Virginia Supreme Court in an unpublished opinion. On application for certiorari that application was denied.[3] At this point the petitioner filed a habeas petition in the United States district court. After a full hearing, including testimony submitted by the parties, the district court denied the petition in an extended opinion. 584 F.Supp. 807. The petitioner has now appealed such denial. We affirm.

## I.

The conviction in this case arose out of the murder of John Harvey Gallaher in Richmond, Virginia, on the evening of September 14, 1979. It is unnecessary to recount in detail the circumstances of the murder or trial other than those connected with a part of the examination of the witness Duncan Eric Meekins, since the facts generally are adequately set forth in the opinion of the Virginia Supreme Court.[4]

Duncan Meekins, whose testimony is the primary issue on this appeal, had participated in the robbery which led to Gallaher's murder and was present at the murder. He testified as a witness for the prosecution in this case under a plea bargain agreement with the Commonwealth. A juvenile sixteen years of age at the time of the murder and trial, Meekins, according to his testimony at trial, lived a few doors from the residence of the petitioner's family in Richmond. Though considerably younger than the Briley brothers,[5] he often visited with the brothers and participated with them in their activities. In connection with the investigation of a murder in which

the Brileys and Meekins were suspected (the Wilkerson murder), Meekins and the petitioner were arrested by the Richmond authorities and taken to the police headquarters. Because Meekins was a minor, the police officers did not interrogate him until his mother and father had arrived at the police station and were present for consultation with their son.[6] At the urging of his parents, Meekins gave the police authorities full information about the crimes in which he had participated with the group. In his testimony in this case concerning the Gallaher murder in which he and the brothers had been involved, Meekins testified to the circumstances of the robbery and the brutal shooting of Gallaher in the back as he was being pushed helplessly about by the group. More importantly, he provided in his testimony the evidence which identified the petitioner as the murderer of Gallaher.

Since Meekins was the only witness to provide evidence in the trial that the petitioner was the "triggerman" in the murder which was the subject of the prosecution, the petitioner naturally sought to put in issue at trial Meekins' credibility by attempting to develop through cross-examination that his testimony was tainted by his plea bargain, particularly by the promise of immunity from the death penalty in the Wilkerson case. To this end, his counsel began with an inquiry into the existence of a plea bargain. The existence of a plea bargain and its details had been made known both to the trial court and the petitioner's counsel before Meekins testified. The terms of such plea bargain were that the Commonwealth would (1) in one of the Barton Avenue murders, in which the group was involved and in which Meekins had been the "triggerman" not ask for the

---

**2.** 451 U.S. 1031, 101 S.Ct. 3022, 69 L.Ed.2d 400 (1981).

**3.** 460 U.S. 1103, 103 S.Ct. 1804, 76 L.Ed.2d 367 (1983).

**4.** 273 S.E.2d at 50. ·

**5.** The Briley brothers were older than Meekins. The youngest Briley brother was five years older and the petitioner, who was the oldest brother and apparently the leader of the group, was nine years older.

**6.** *See Briley v. Commonwealth,* 221 Va. 563, 273 S.E.2d 57, 63 (1980).

death penalty against Meekins,[7] and (2) in all the others in which Meekins had participated with the Briley brothers, including the one under review here, Meekins was not to receive more than any other defendants received and (3) finally, Meekins was to testify "truthfully" in all the cases in which the group had been involved. When asked about the plea bargain in this case, Meekins responded that *"for this case"* the agreement provided that he was to receive no more time on conviction than any other defendant involved in the prosecution.

When the witness testified what his plea bargain was "for this case," a bench conference was promptly requested by the Commonwealth's attorney. In this bench conference, the Commonwealth's attorney explained the reason the witness restricted his explanation of the plea bargain to the prosecution before the court. He said that in order "not to bring anything in this case which would indicate or cause an error to the defendant," he had "cautioned" Meekins about submitting "any testimony concerning the triple homicide on Barton Avenue or the double homicide on Fifth Avenue," these being other murders in which it was alleged the witness and the petitioner had been involved. But the Commonwealth's attorney positively indicated no intention of seeking to limit in any way inquiries into all or any part of the plea bargain. In fact he suggested that petitioner's counsel ask the witness specifically about the application of the plea bargain to "any case that [the witness] might be involved in." This suggestion, had it been accepted by petitioner's counsel, could have elicited the terms of the plea bargain as it related to the Wilkerson murder in which the witness had been given immunity from the death penalty. To the invitation of the prosecution that the petitioner's counsel should ask the witness what the plea bargain was in any of the cases in which he was involved, the petitioner's counsel immediately responded: "I think we are entitled to know what the plea agreement

[was] without opening up all that," indicating clearly the intention of petitioner's counsel to limit any inquiry to the bare fact that Meekins had been promised immunity from a death sentence for his testimony and of strictly omitting any reference to the circumstances of the case in which the immunity was granted.

The Commonwealth's attorney's response to this contention that the petitioner was entitled to limit the inquiry about the plea bargain *only* to the bare fact that it included immunity in favor of the witness from any death sentence was that the "jury [was] entitled to know what the plea agreement is" in its "entirety." It was thus the Commonwealth and not the petitioner who sought to go into the plea bargain "in [its] entirety." The petitioner's counsel's answer was that all he wanted "to ask" the witness was whether it was not a part of the agreement "that [the witness] won't get the chair." The Court ruled that such question was proper and would be allowed, but warned counsel that if the petitioner asked the witness whether he had "been promised that he won't get the chair, then you [referring to Commonwealth's attorney] are going to have the right to ask him, doesn't that apply to other cases?" And at that point "you [referring to petitioner's counsel] are going to open up the whole band box." After a conference following this colloquy the petitioner elected not to inquire further into the specific terms of Meekins' plea bargain.

Later in the proceedings the petitioner vouched the record that he had expected to prove in his cross-examination of Meekins on the plea bargain. He repeated that he wanted by his cross-examination to show that Meekins "had killed somebody and could have, in fact, been subject to capital murder on that killing, and that a part of his plea bargain was that he would not get the chair." However, the petitioner by his counsel contended, despite his limited inquiry into the plea bargain, that the Com-

---

7. Under Virginia law only the "triggerman" is subject to the death penalty. *Johnson v. Com-* *monwealth,* 220 Va. 146, 255 S.E.2d 525 (1979).

monwealth should be barred from inquiring on redirect into any other parts of the plea bargain between the Commonwealth and Meekins or into any of the details of the witness' involvement in the Wilkerson murder, the very murder in which the plea bargain gave the witness immunity from the death penalty, because that would have exposed the petitioner's connection with the Wilkerson and Barton murders.

Later, in the federal habeas proceedings, the Commonwealth's attorney responded to an interrogatory directed at eliciting the testimony that the Commonwealth was prepared to offer in connection with the plea bargain giving Meekins immunity from a capital offense in the murder of Wilkerson. He stated that he was prepared to show that Meekins had acted as "triggerman" in the killing of Wilkerson only "because of his fear of the Brileys." He added also that Meekins had become "disgusted" and had sought to persuade the Brileys to desist from their "senseless and wanton killings." This proffer was in line with the witness' testimony in the related prosecution of the brother James Briley as reported in 273 S.E.2d at 59. In that testimony Meekins admits that in this incident in which Harvey Wilkerson, his common law wife Judy Diane Barton, and their five-year old son Harvey Wayne Barton were murdered, he had fired the fatal shot killing Harvey Wilkerson. He described the circumstances under which he shot Wilkerson. In the course of the robbery of Wilkerson, the petitioner had taken a .38 silver derringer from Wilkerson and had given it to Meekins. He observed James Briley, the petitioner's brother, shoot Barton. James then told Meekins "you[ve] got to get one." Meekins did as he was instructed, using the derringer given him by the petitioner, the prosecutor vouching to the court in the habeas hearing that Meekins would testify that he acted out of fear of what the Brileys would do if he did not obey. The proffer further included that members of the witness' family had received threats of harm from the Brileys. The purpose of this proffer was to show justification, if

accepted by the prosecution, for an offer of leniency to Meekins.

## II

Though the petitioner has asserted a number of grounds for relief in his habeas petition, his chief claim—the only one he actually argued orally on this appeal—related to this cross-examination of Meekins about the latter's plea bargain. His contention in this regard, as set forth in his petition for habeas relief in the district court was that his conviction was "unconstitutional in that the Commonwealth's attorney failed to reveal the true nature of the plea agreement either as it pertained to testimony at the trial for the death of Johnny Gallaher alone or as it pertained to the plea agreement in its entirety and in addition, knowingly created a serious, material misimpression regarding the plea agreement, presenting misleading evidence at trial as well as arguing the misimpression extensively to the jury in closing, as reflected in the trial transcript and at the hearing before the court on August 31, 1983."

The claim that "the true nature of the plea agreement" between the witness Meekins and the Commonwealth was not revealed to the petitioner and his counsel is manifestly frivolous. The record reveals three occasions on which the Commonwealth's attorney stated in detail the plea bargain. The suggestion that the Commonwealth had presented "misleading evidence at trial" and had "knowingly created a serious, material and misimpression" of the plea bargain is equally inaccurate. The prosecution never misstated the terms of the plea agreement to the jury as it had been developed at trial. It is true that the prosecutor only referred to that part of the plea bargain which dealt with the trial in progress. The reason for such restraint is obvious. That part of the plea bargain was the only part proven. The failure to prove the other parts of the plea agreement was not because the prosecution concealed the other terms but because the petitioner by his counsel made a reasoned decision not to

go into the other terms and circumstances of the plea. The absence of proof in the record of the full agreement was also not because the trial judge denied the petitioner the right to prove the plea bargain "in [its] entirety." The trial judge clearly stated to petitioner's counsel that he could ask Meekins about all or any part of the plea bargain. If the jury had a "misimpression" of the plea bargain caused by the incompleteness of the proof of its terms, it was not the prosecution's fault or that of the trial court but that of petitioner and his counsel.

On this appeal the petitioner seems to have shifted his position and now rests his claim of error wholly on the contention that the trial court denied him the right to cross-examine Meekins on the "plea agreement [with Meekins] *in its entirety.*" We, however, find it disingenuous for the petitioner to contend that the trial judge denied him the right to cross-examine Meekins on the "plea agreement in its entirety." As we have said, never at any time did the trial judge rule that petitioner's counsel could not cross-examine Meekins on his plea bargain "in its entirety." He made it clear on the contrary that the petitioner could fully cross-examine the witness on the latter's plea bargain. What the trial judge did and all that he did was, as the Virginia Supreme Court noted, to caution the petitioner's counsel that, if the petitioner did inquire into other crimes in which Meekins was involved and to which the plea bargain related, the Commonwealth could inquire fully into the circumstances of the plea bargain "in [its] entirety."

What, in truth, is the petitioner's position in this regard is not that he was denied the right to cross-examine Meekins as fully as he wanted on the plea bargain but that the trial court committed error in ruling that, if the petitioner elected to go into a part of the plea bargain, the prosecution would be entitled to go into the circumstances of the full plea agreement. The claim of the petitioner in his brief that he wanted to go into the plea bargain "in [its] entirety" is thus not only inaccurate and misleading but it is the exact opposite of what the petitioner wanted.

■ The issue posed by this contention is simply whether, as petitioner contends, a defendant may impeach a witness by proving an incomplete part of his plea bargain and whether, under such circumstances the prosecution will be denied the right to respond by proving the complete plea agreement. The argument of the petitioner in support of his position is without precedential support and has been consistently rejected as untenable throughout this prosecution. It was raised at the state trial; on appeal to the Virginia Supreme Court it was pressed by the petitioner; and it was a part of the petitioner's application for certiorari after the affirmance of his conviction by the Virginia Supreme Court. It was again advanced in the State post-conviction proceedings and below in the district court in federal habeas proceedings. The contention was expressly disapproved by the Virginia Supreme Court and that decision, though twice considered by the United States Supreme Court, was not disapproved. The disposition of the contention by the Virginia Supreme Court was as follows (*Briley v. Commonwealth,* 273 S.E.2d at 53):

"In both *Woody* [*v. Commonwealth,* 214 Va. 296, 199 S.E.2d 529 (1973)] and *Deavers* [*v. Commonwealth,* 220 Va. 14, 255 S.E.2d 458 (1979)], the denial of the right of cross-examination was absolute with respect to the particular point involved. Here, there was no denial of any right. The defendant had shown the jury that Meekins was testifying pursuant to a plea agreement and had brought out what the agreement provided concerning the present case. The trial court merely warned defense counsel of the consequences that would flow from inquiry into the other crimes with which Meekins was charged.

"We do not believe the trial court erred in its ruling. The situation here is identical with that addressed in *United States v. Barrentine,* 591 F.2d 1069 (5th Cir.), *cert. denied,* 444 U.S. 990, 100 S.Ct.

521, 62 L.Ed.2d 419 (1979). There, in a gambling prosecution, the government's star witness, an accomplice of the appellants, was cross-examined concerning his prior arrests on other charges. On redirect examination, the prosecution was permitted to show by the witness that one of his prior arrests involved an incident where he had picked up marijuana at the request of one of the appellants. As in the present case, the trial judge in *Barrentine* had warned defense counsel that questioning the witness concerning other crimes would open the door to redirect testimony of the appellants' involvement in those crimes. The Fifth Circuit affirmed, stating:

> " 'Cross-examination on a part of a transaction enables the opposing party to elicit evidence on redirect examination of the whole transaction at least to the extent that it relates to the same subject.'

591 F.2d at 1081. We adopt the quoted language as applicable here and dispositive of the question under discussion."

The reasoning and conclusion of the Virginia Supreme Court, of the trial court and of the district court, are in accord with the federal rule. One of the most recent federal cases expressive of this conclusion is our own case of *United States v. McEachern*, 675 F.2d 618 (4th Cir.1982). In *McEachern* the defendant was indicted for "making false statements in the acquisition of firearms ...." *Id.* at 619. Hunter had been indicted for a similar offense, apparently in the same investigation that resulted in the defendant's indictment. Hunter pled guilty pursuant to a plea bargain under which he agreed to disclose "everything he knows about the matters concerning this investigation, and about any other matters relating to the illegal purchase of firearms, terrorist activities, the Muslims that he has dealt with at the Islamic House ... and any other matter that the Government may choose to inquire." *Id.* at 624. At the conclusion of Hunter's testimony, the Government offered the written plea agreement in evidence. The defendant objected, pointing out that the plea agreement "con-

tained references to terrorist activities and Muslims," matters not directly related to the offense charged against the defendant. The district judge advised the defendant's counsel that he would keep the plea bargain "out if you want it out" but, similar to the action of the trial judge in this case, warned defendant's counsel that he could "cross-examine any way [he] want[ed], but I [the court] can't say that when you want to go into parts of it [the plea bargain] that the government may not be in a position of saying, well, if you want to go into part of that, how about the rest of it ...." The district judge at that point sustained for the moment the objection. Unlike the petitioner's counsel, who elected in the same situation not to pursue the plea bargain, counsel for the defendant in *McEachern* proceeded, despite the trial judge's warning, to inquire about the plea bargain. Defendant's counsel, in his cross-examination, dealt with "the fact that, as part of the plea agreement, [the witness] was being freed from prosecution for five bank robberies he had committed in 1979." In view of this cross-examination, the district judge "agreed that it would be unfair to let the defense pick and choose the unfavorable parts of the plea agreement and ignore the rest." He accordingly admitted the plea bargain in evidence with its reference to "terrorist activities and Muslims." We, on appeal, sustained that ruling (675 F.2d at 625–26):

> "Defense counsel tried to impeach the credibility of Hunter by using the plea agreement to best advantage. Although a proper tactical maneuver, the defense counsel cannot distort the agreement by making it look as though Hunter obtained a better deal than he actually received. The defense counsel was travelling a precarious route by questioning Hunter on the plea agreement; he cannot later complain that the admission of the document, necessitated by the way he cross-examined Hunter, to inform the jury of the whole deal was error."

In *McEachern*, the Court cited and expressed firm agreement with the "state-

ment in *United States v. Rosson*, 441 F.2d 242, 244 (5th Cir.1971), *cert. denied*, 404 U.S. 843, 92 S.Ct. 140, 30 L.Ed.2d 78 (1971)" to the effect [p. 625]:

"If the defense relies upon the existence of the plea bargain to attack the credibility of the witness, it is not then entitled to preclude the jury from being apprised of additional matters relevant to the bargain so as to leave an incorrect inference that the witness has made a better bargain for himself ... than in fact he has made."

In a recent case from that same circuit, the decision in *Rosson* was reaffirmed and followed, *United States v. Martino*, 648 F.2d 367, 389 (5th Cir.1981), *cert. denied sub nom Palermo v. United States*, 456 U.S. 943, 102 S.Ct. 2007, 72 L.Ed.2d 465 (1982). In that case the primary witness against the defendant was examined on cross-examination on a part of his plea agreement. As has the petitioner in this case, the defendant there, however, argued that "the areas of the [plea] agreement to which they object [for inquiry by the prosecution] were not covered in their cross-examination." The Court quoted the above language in *Rosson* in connection with the defendant's objection and then said (648 F.2d at 389):

"The court properly admitted the plea bargain agreement into evidence; appellants' arguments to the contrary are rejected."

In *United States v. Johnson*, 605 F.2d 1088, 1090 (8th Cir.1979), one of the defendants (McRoy) in a joint indictment entered into a plea agreement under which he was to testify against the defendant Johnson. McRoy testified that under his plea bargain "he had been promised that he would be sent to a certain penal institution in California in exchange for his testimony against Johnson in this case." Afterwards, the district judge disclosed other agreements by McRoy "in exchange for his guilty plea." Among these additional agreements was the Government's agreement to "refrain from filing any federal check charges against McRoy so long as McRoy would testify against Johnson in the event such charges were brought against Johnson." The defendant wanted to cross-examine McRoy on "these negotiations" relating to the additional agreements but "without revealing to the jury that check charges might be brought against Johnson in the future," it being the defendant's apparent concern that the reference to possible future check prosecutions against Johnson would suggest other crimes by the defendant. In response, "[t]he court [just as the trial judge in this case] gave Johnson the option of placing before the jury the entire sequence of plea negotiations or letting the record stand." The defendant, under those circumstances, "chose not to introduce further testimony and moved for a mistrial." On appeal from that denial, the Court said (605 F.2d at 1090):

"Furthermore, after carefully discussing the matter with counsel out of the hearing of the jury, the District Court determined that introduction of only part of the collateral plea terms would not present a full and fair picture. Generally, a trial court has broad discretion to determine the proper scope of evidence to be admitted at trial. [citing cases] In this case, it was clearly within the sound discretion of the District Court to require that all conditions of the plea be put into evidence if any part of it were introduced."

*United States v. Barrentine*, 591 F.2d 1069 (5th Cir.), *cert. denied*, 444 U.S. 990, 100 S.Ct. 521, 62 L.Ed.2d 419 (1979), cited and quoted in the opinion of the Supreme Court of Virginia, is to the same effect.

The rule under which the opening up of a part of a transaction in cross-examination opens up an inquiry into the transaction "in [its] entirety," is a long recognized evidentiary rule in federal jurisprudence [*Carver v. United States*, 164 U.S. 694, 696–97, 17 S.Ct. 228, 229–30, 41 L.Ed. 602 (1897); *Gilmer v. Higley*, 110 U.S. 47, 50, 3 S.Ct. 471, 472, 28 L.Ed. 62 (1884)]. The rule was accurately stated by us in *United States v. White*, 377 F.2d 908, 911 (4th Cir.1967):

"When a defendant, acting through competent counsel, chooses to open up

constitutionally forbidden subject matter, he may not effectively complain that his own trial strategy denied him his constitutional rights."

*See also, United States v. Evans,* 239 F.Supp. 554, 559 (E.D.Pa.1965), *aff'd.,* 359 F.2d 776 (3d Cir.1966):

> " 'Where a witness has been cross-examined as to a part of a conversation, statement, transaction, or occurrence, the whole thereof, to the extent that it relates to the same subject matter and concerns the specific matter opened up, may be elicited on redirect examination.' "

A recent application of this rule is *United States v. Walker,* 613 F.2d 1349, 1352 (5th Cir.1980), *cert. denied,* 446 U.S. 944, 100 S.Ct. 2172, 64 L.Ed.2d 800, in which the defendant was charged with narcotics violations. One of the witnesses for the government was a convicted felon or prostitute, or both. She had been given immunity by the prosecution. In order to impeach the witness, counsel for the defendant asked her whether she had not been a prostitute for several years. On redirect, the witness was questioned "who her 'pimp' was, to which Walker's attorney objected." The question was allowed over defendant's objection. On appeal the defendant argued that the question, when allowed, represented "evidence of another crime by Walker, was prejudicial and not probative of guilt or innocence, and was therefore improperly admitted." In sustaining the admissibility of such question, the Court said (613 F.2d at 1353):

> "Cross-examination with respect to part of a transaction enables the opposing party to elicit evidence on re-direct examination of the whole transaction at least to the extent it relates to the same subject (citing *Barrentine*). Because the defendants opened the door to this line of questioning, the government's questions on redirect were permissible."[8]

These authorities amply sustain the ruling of the trial judge in this case. What the trial judge did here was no different from the ruling of the trial judge in both *McEachern* and *Johnson.* It is manifest that it would have been unfair to permit the petitioner simply to prove that Meekins, who had been the "triggerman" in a murder similar to the status of the petitioner as the "triggerman" in the Gallaher murder, had been given immunity from a death sentence without further explication. Such a ruling would have been highly prejudicial to the prosecution and could well have given the jury a false picture of the plea bargain and the reasons for it. That this was true was in effect admitted by the statement in petitioner's brief in this court where he explained the purpose in petitioner's cross-examination of Meekins to be that he "wanted to show that Meekins had been promised what many people would think the utmost in leniency for his testimony." Unquestionably the Commonwealth was entitled to rebut this inference of unexplained leniency by showing the full circumstances under which the plea bargain was granted. The Commonwealth vouched in the habeas proceedings—and this is not contradicted by the petitioner— that, if the petitioner had proved merely that part of the plea agreement that Meekins had been granted immunity from a death sentence in the Wilkerson murder, it would have proved the circumstances of that murder as given by Meekins himself. Under his story, Meekins shot Wilkerson because he was afraid to disobey one of the Brileys, a group which had already demonstrated their ruthlessness and complete disregard for human life by their earlier "brutal and wanton" killings. Considering that the witness was a juvenile, surrounded by the three Briley brothers, this fear could have been real. The evidence to this effect would have placed the immunity grant of Meekins in a more favorable light.

Further, the government represented it was prepared to show by Meekins that the

---

**8.** *To the same effect, see United States v. Pintar,* 630 F.2d 1270, 1284 (8th Cir.1980); *United*

*States v. Geller,* 481 F.2d 275, 276 (9th Cir.1973).

latter had been disillusioned by the brutal and vicious conduct of the petitioner and his brothers and had attempted to persuade them to discontinue their killings. In addition, Meekins had agreed to testify "truthfully" in all the several murders in which the petitioner, his brothers and Meekins had been involved. This necessarily meant that he would be testifying who the "triggerman" was in those cases, if he knew. Inevitably, this would have required the identification of the petitioner. All of this was a part of the plea bargain.

 Just as the defendant's counsel in *Johnson* did not choose to go into the details of a plea bargain at the risk of opening up all the circumstances of the plea bargain, so here counsel for the petitioner chose not to inquire further into the plea bargain. Having elected not to hazard the consequences of the exposure of the full circumstances of the plea bargain, the petitioner cannot complain now about the choice he voluntarily made nor may he be permitted to fault the trial judge because the latter cautioned correctly petitioner's counsel as to what would be the consequences of inquiring into a part of Meekins' plea bargain. The claim to the contrary by the defendant is without merit.

### III.

 Though he did not place the same emphasis on it as he did on the one just discussed, the petitioner raised also the objection that the trial judge had erred in not giving an instruction on lesser included offenses.[9] Under Virginia law a criminal defendant is not entitled to have the jury instructed on lesser included offenses absent supporting evidence in the record. *Clark v. Commonwealth*, 220 Va. 201, 257 S.E.2d 784 (1979). A defendant is not entitled to have the jury instructed as to lesser degrees of the crime simply because the crime charged is murder. *Id.* 257 S.E.2d at 789. *Wooden v. Commonwealth*, 208 Va. 629, 159 S.E.2d 623 (1968).

In *Wooden* the defendant was convicted of first degree murder after the prosecution presented evidence that he participated in an armed robbery which resulted in the death of a store clerk. Wooden testified that he had gone into the store to purchase cigarettes and a soda. He left the store and took no part in the robbery. In affirming the trial court's refusal to charge the jury on second degree murder the Virginia Supreme Court concluded that the evidence in the record could lead the jury to only two possible verdicts, guilty of first degree murder or not guilty. If the jury believed the prosecution's evidence it could only find Wooden guilty of first degree murder. The success of Wooden's entire defense rested upon the jury believing that he was not involved in the robbery scheme. No error was committed by refusing to instruct on second degree murder since there was no evidence in the record to support such a charge.

In *United States v. Williams*, 604 F.2d 277 (4th Cir.1979), *cert. denied*, 444 U.S. 967, 100 S.Ct. 457, 62 L.Ed.2d 381, the defendant was convicted of assaulting a deputy marshal. Williams' defense at trial was that he did not strike the officer at all and that any physical contact that occurred was the result of an accident. He claimed that he lost his balance and fell into the officer. Williams sought a jury charge that knowledge that the victim was a federal officer was a necessary element of the offense charged. The court rejected the requested charge and instead instructed that knowledge was irrelevant. While knowledge can be relevant to prove the necessary mens rea such a theory was not advanced by the defendant. Therefore this court found no error in the rejection of the proffered instruction.

Of even greater consequence is the case of *Hopper v. Evans*, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), in which the Supreme Court granted certiorari to ascertain "whether, after invalidation of a state law which precluded instructions on lesser

---

9. In his testimony, the petitioner's sole defense was an alibi. Such a defense would not call for an instruction on lesser-included offenses. We, however, have considered the claim.

included offenses in capital cases, a new trial is required in a capital case in which the defendant's own evidence negates the possibility that such an instruction might have been warranted." *Id.* at 606, 102 S.Ct. at 2050.

In *Hopper*, the defendant had been on a cross country crime spree which included about thirty robberies, nine kidnappings, and two extortion schemes. He shot a storekeeper in cold blood during the course of a robbery. The defendant freely admitted both to the grand jury and to the jury his participation in the events, and as much as requested the jury to give him the death penalty.

After conviction, the defendant, however, changed his mind and in federal habeas corpus proceedings his principal claim was that an Alabama statute had precluded a lesser included offense instruction. The statute had done just that. The statute, however, had been invalidated by the United States Supreme Court in the previous case of *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

The Supreme Court held that since there was no evidence to support a lesser included offense instruction the fact that one was not given was not error. The Court described the rule: "The federal rule is that a lesser included offense instruction should be given 'if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater.'" *Id.* 456 U.S. at 612, 102 S.Ct. at 2053. The Court decided that an instruction that the jury might find that the defendant did not intend to kill his victim was not warranted. *Id.* at 612–13, 102 S.Ct. at 2053–54.

■ Thus, Virginia and the Circuit and the Supreme Courts agree that lesser included offense instructions are not re-quired where, as here, there is no support for such instructions in the evidence.

## IV

The petitioner challenges the validity of his death sentence. We do not understand the petitioner to question the constitutionality of the Virginia death statute. That statute provided two grounds for imposing a death sentence in a murder conviction. The first of these is generally described as the "dangerousness" circumstances illustrated in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), and the "vileness" circumstances as represented in the statute reviewed in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Both grounds in the Virginia statute were phrased in basically the same language as in the statutes in the cases cited. The Virginia statute thus met the requirements set forth in *California v. Ramos*, 463 U.S. 992, ——, 103 S.Ct. 3446, 3451–52, 77 L.Ed.2d 1171, 1179–80 (1983).

The attack of the petitioner in this context actually is on, first, the trial instruction on the "vileness" ground and, second, on the inadequacy of the instruction on unanimity of the verdict by the jury, and on the uncertainty of unanimity on the part of the jury.

■ The petitioner, however, does not question the correctness of the Court's instruction on the adequacy of the evidence to support a finding on the ground of "dangerousness,"[10] and, since the jury returned a verdict finding the death sentence warranted under both the "vileness" and the "dangerousness" standard, it is of no importance whether the instruction on "vileness" was correct so long as the instruction on "dangerousness" was correct, provided of course the verdict of the jury was unanimous on the "dangerousness" ground. This conclusion follows from the decision of

---

**10.** The record on the sentencing phase of the case established that the petitioner had been convicted of six murders, two robberies, one rape, a statutory burglary and numerous uses of a firearm, all in a relatively short time. The petitioner in his own testimony admitted to some thirteen to fifteen felony convictions, all but one of which was related to the various murders, rape and burglary charges, and muggings in which he had participated. *See also,* 273 S.E.2d at 51.

the Supreme Court in *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).

In *Zant* the jury had found three aggravating factors present in order to support its sentence of death. They were (1) murder committed by a person with a prior capital felony record; (2) murder committed by a person with a substantial history of serious assaultive criminal convictions and (3) murder committed by an escapee. *Id.* at ——, 103 S.Ct. at 2737. In another case the Georgia Supreme Court struck down ground two as being unconstitutionally vague.

The Court concluded that "a death penalty supported by at least one valid aggravating circumstance need not be set aside … simply because another aggravating circumstance is 'invalid' in the sense that it is insufficient by itself to support the death penalty." *Id.* at ——, 103 S.Ct. at 2746. The Court in *Zant* noted that the Georgia statute was different from some other state statutes because the jury was not instructed to give any special weight to any particular aggravating circumstances, to consider multiple aggravating circumstances more significant than one aggravating circumstance or to balance aggravating circumstances against mitigating circumstances under a special standard. Likewise the Virginia statute places none of these additional demands upon the jury.

 This leaves for consideration the question whether the record is sufficiently clear on the unanimity of the jury verdict in the sentencing proceedings. In the form of verdict furnished the jury, the two grounds were stated both conjunctively and in the alternative ("and/or"). In answer, the jury, in its finding pursuant to the form of verdict submitted to it, struck out "or," leaving "and." The trial judge took note of this action by the jury and specifically inquired of the Foreman of the Jury whether the striking of "or" meant that the jury was not only "unanimous in the final ver-

dict" but also "unanimous in finding the two lawful provisions that you must find in order to impose a death sentence." The Foreman responded affirmatively. The Court then addressed the same inquiry to all members of the jury and the record states, "[t]he members of the jury answered affirmatively." The jury thus unanimously found both "vileness" and "dangerousness" as a warrant for the death sentence in this case. Since it is clear that there was evidence sufficient to sustain the "dangerousness" finding and that the instruction on such ground was not open to attack, it is unimportant whether the instructions on "vileness" were strictly correct or not.[11] Moreover, the affirmance by the jurors that their verdict was unanimous moots any claim of error in the instructions on unanimity.

The petitioner has raised a number of other points, none of which was adverted to in oral argument. We have "[n]evertheless … given each claim careful consideration because of the special gravity of the punishment the petitioner is to receive" and have found no constitutional error in any of the claims of the petitioner. *See Hutchins v. Garrison*, 724 F.2d 1425 (4th Cir.1983). We accordingly affirm the denial of the petition for habeas relief herein. The stay of execution heretofore granted by us is extended for twenty-one (21) days from the filing of this opinion to permit the petitioner to apply to the Supreme Court or a Justice thereof for a further stay.

---

**11.** We do not mean to imply that in our opinion the instruction on "vileness" was inaccurate. Under the circumstances of this case, we find no occasion to reach such question and, therefore, express no opinion on the correctness of the instruction.