989 F.2d 495
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jeffery L. Avery, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Darrell L. Avery, II, Defendant-Appellant.
 Nos. 91-5081, 91-5080.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 4, 1992
Decided: March 17, 1993
 
 Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, District Judge. (CR-90-113-02, CR-90-113-01)
 George Vernon Laughrun, II, GOODMAN, CARR, NIXON & LAUGHRUN, Charlotte, North Carolina, for Appellant Jeffery Avery.
 Harold Johnson Bender, BENDER & MATUS, Charlotte, North Carolina, for Appellant Darrell Avery.
 Yoel Tobin, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.
 Shirley D. Peterson, Assistant Attorney General, Robert E. Lindsay, Alan Hechtkopf, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.
 W.D.N.C.
 AFFIRMED.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Darrell L. Avery, II, and Jeffrey L. Avery appeal their convictions for violating and for conspiring to violate federal criminal tax laws. In 1986, the Avery brothers, operators of an accounting and tax preparation business, persuaded clients to buy stock of another client, Robinson Yacht Company, and thereby acquire percentages of Robinson Yacht's net operating losses to offset their tax liabilities.[1] Without Robinson Yacht's knowledge, Darrell Avery prepared tax returns for these clients listing the yacht company's losses and subsequently amended Robinson Yacht's tax return to list these clients as shareholders. The Averys kept the proceeds from the sales of the stock and did not inform their clients of their false tax statements.
 
 
 2
 A jury convicted Darrell Avery on nine counts of willfully aiding and assisting in the preparation and presentation of false tax returns in violation of 26 U.S.C. § 7206(2), one count of willfully making and subscribing a false return in violation of 26 U.S.C.s 7206(1), and one count of conspiracy in violation of 18 U.S.C. § 371. On appeal, he contends that the district court erroneously instructed the jury and erroneously admitted an IRS agent's testimony on the procedure used for issuing a search warrant. Jeffrey Avery was also convicted of conspiracy in violation of 18 U.S.C. § 371, but was acquitted on the only other charge against him-willfully aiding and assisting in the preparation of a false return in violation of 26 U.S.C.s 7206(2). Jeffrey Avery raises the same issues that his brother raises. Additionally, he argues that his acquittal on the substantive count and his conviction on the conspiracy count are fatally inconsistent and that the trial court failed to find that he was a minimal participant in the conspiracy and reduce his sentence accordingly. We affirm.
 
 
 3
 * For many years, the Avery brothers-Darrell and Jeffrey-and their parents operated an accounting and tax return preparation business, Avery Financial Services ("Avery Financial"). One of their clients, Robinson Yacht, suffered losses in 1986. Darrell approached Waverly Robinson, the owner of Robinson Yacht, about selling stock to Avery clients who could use the losses to offset their tax liabilities, but Robinson refused. Unbeknown to Robinson, the Avery brothers had already sold Robinson Yacht stock to clients, advising them to claim Robinson Yacht's losses against their tax liabilities.[2] The clients paid for the stock with checks made out to "Avery Financial" or "Avery Financial Escrow Account," which the Averys deposited into their accounts and withdrew for personal use. Darrell, in preparing these clients' tax returns, offset their income with the fraudulently obtained losses.[3]
 
 
 4
 Jeffrey played a minor role in most of the sales of Robinson Yacht's stock, but he was a key player in a transaction with Printing Equipment Corporation ("Printing Equipment"), owned by Harold McKee and Ralph Brown. Darrell initially contacted McKee and suggested that Printing Equipment offset its $58,000 tax liability by buying Robinson Yacht stock. After both brothers met with McKee and Brown and assured them of the legality of the proposed offset, McKee and Brown agreed to buy the stock for $33,000. It was Jeffrey who discussed the details of the stock purchase contract with McKee, and when McKee asked for the stock certificates, Jeffrey assured him that Avery Financial had taken care of them. Darrell then prepared Printing Equipment's November 1987 tax return and included the losses "purchased" from Robinson Yacht. Jeffrey delivered the return to Printing Equipment's office and procured McKee's signature.
 
 
 5
 In the meantime, Waverly Robinson had prepared and filed Robinson Yacht's 1986 tax return, listing himself as sole shareholder. Robinson gave Darrell a copy of the Robinson Yacht return and requested tax advice. Without Robinson's knowledge, Darrell prepared an amended return, forged Robinson's signature to it, and filed it. The forged return incorrectly listed Robinson Yacht's address as the street address of Avery Financial and claimed a $95,000 loss for Robinson Yacht.[4] It also listed three other Avery clients (Billy Watts, Gerald Ferguson, and Erroll Sult) as ten-percent owners of Robinson Yacht.
 
 
 6
 The IRS audited all of the clients who purchased Robinson Stock and disallowed the losses. After an IRS investigation, a grand jury indicted Darrell on eleven counts: nine counts of violating 26 U.S.C. § 7206(2), one count of violating 26 U.S.C.s 7206(1), and one count of violating 18 U.S.C. § 371 (conspiracy). Jeffrey was indicted on only two counts: one count of violating 26 U.S.C.s 7206(2) and one count with Darrell of conspiracy under 18 U.S.C.s 371. Evidence presented by the government in the ensuing eight-day trial included testimonies of IRS agents and Avery clients, some of whom had taped their conversations with the Averys during the IRS investigation. The jury convicted Darrell on all counts but convicted Jeffrey on the conspiracy count only. Before sentencing, Jeffrey moved to set aside his verdict as inconsistent. The district court denied the motion. After a hearing, the court sentenced Darrell to fifty-six months of imprisonment and three years of supervised release, and ordered him to pay $79,372 in restitution. The court sentenced Jeffrey to sixteen months of imprisonment and three years of supervised release, and ordered him to pay $16,500 in restitution.
 
 
 7
 On appeal, the Avery brothers raise three issues jointly. Jeffrey, individually, raises two additional issues.
 
 II
 
 8
 We initially address the brothers' joint contentions of error. Both Darrell and Jeffrey criticize the district court's jury instructions on reasonable doubt and good faith. They also argue that the court should have excluded the testimony of IRS Agent Michael J. Toomey, Jr., concerning the issuance of the search warrant of Avery Financial. We consider these arguments sequentially and find each without merit.
 
 
 9
 The Avery brothers first argue that they deserve a new trial because the court improperly instructed the jury on reasonable doubt. They claim that the court "stated what reasonable doubt is not, but failed and refused to instruct the jury what reasonable doubt is."[5] This argument misconceives the law. It is true, of course, that "at some point a reasonable doubt definition may be so incomprehensible or potentially prejudicial to require reversal." United States v. Moss, 756 F.2d 329, 333 (4th Cir. 1985). As long as the instruction" correctly conveys the concept of reasonable doubt," however, the charge is not sufficiently prejudicial to require reversal. Id.; see Holland v. United States, 348 U.S. 121, 140 (1954). As the defendants concede, we have long admonished trial courts not to define reasonable doubt. See, e.g., Adams v. Aiken, 965 F.2d 1306, 1312 (4th Cir. 1992); United States v. Headspeth, 852 F.2d 753, 755 (4th Cir. 1988). In fact, we recently approved of a jury instruction almost identical to the one given here. See United States v. Adkins, 937 F.2d 947, 950 (4th Cir. 1991).
 
 
 10
 The defendants' second argument concerns the district court's jury instruction on good faith. The Averys contend that the instruction misled the jury by failing to state that the burden of proof on the good-faith defense remained with the government. The court instructed:
 
 
 11
 If a person in good faith believes that an income tax return prepared and presented to the Internal Revenue Service as a result of his aid and assistance, or as a result of his counseling, procuring and advising, truthfully reports the allowable deductions of the taxpayer under the Internal Revenue laws, he cannot be found guilty of willfully aiding and assisting in, and counseling, procuring and advising, the preparation and presentation of a false or fraudulent income tax return.
 
 
 12
 This instruction informed the jury that it could not convict on the section 7206(2) counts if the defendants in good faith believed in the truthfulness of their clients' returns. See Cheek v. United States, 111 S. Ct. 604, 610 (1991); United States v. Hirschfeld, 964 F.2d 318, 322 (4th Cir. 1992), cert. denied, 61 U.S.L.W. 3499 (Jan. 19, 1993). Nothing in this instruction suggested that the defendants had to prove their good faith. Furthermore, the court told the jury to consider the instructions as a whole. And, throughout the jury instructions, the court emphasized the defendants' presumption of innocence and the government's burden of proving guilt beyond a reasonable doubt. Contrary to the defendants' assertions, these instructions, in our view, did not mislead the jury or shift the burden of proof. See United States v. Bakker, 925 F.2d 728, 738 (4th Cir. 1991). Reading the jury instructions as a whole, we find no error.
 
 
 13
 Nor did the trial court err in admitting IRS Agent Toomey's testimony concerning the affidavits submitted by the IRS to obtain a search warrant for Avery Financial's offices. The defendants argue that the testimony was hearsay and denied them their Sixth Amendment right to cross-examine the magistrate and the affiants. We are unpersuaded.
 
 
 14
 The disputed portions of Agent Toomey's testimony arose because the Averys' attorney, who had implicitly attacked the IRS's motive and method of conducting the search in his opening statement, pursued this line of attack in his cross-examination of Toomey. Among other questions, he asked Toomey whether a large number of IRS agents conducted the search, whether they drew weapons, whether they carted out boxes of material, and whether they went through all Avery Financial's files. On redirect, the government attempted to rebut the Averys' attack by crediting the search. In so doing, the government elicited Toomey's testimony that a magistrate had found probable cause to issue the search warrant, based on the affidavits of three Avery Financial clients and on recorded conversations between these clients and the defendants. This is the testimony that the Averys attack here.
 
 
 15
 The Averys' counsel opened the disputed line of questioning by making detailed inquiries about the search on cross-examination. As we stated in Briley v. Bass, 742 F.2d 155 (4th Cir.), cert. denied, 469 U.S. 893 (1984), "[w]hen a defendant, acting through competent counsel, chooses to open up constitutionally forbidden subject matter, he may not effectively complain that his own trial strategy denied him his constitutional rights." Id. at 162-63 (quotations omitted). Further, if we followed the Avery brothers' contentions, we would reverse the well-settled principle that opening an inquiry of part of a transaction in cross-examination opens the transaction for inquiry "in its entirety" on redirect examination. Id. at 162 (citing Carver v. United States, 164 U.S. 694, 696-97 (1897)); see also United States v. Ariza-Ibarra, 605 F.2d 1216, 1225-26 (1st Cir. 1979) (finding no error where prosecution witness testified that probable cause existed after defense attempted to establish on cross-examination that arrests were without probable cause), cert. denied, 454 U.S. 895 (1981).
 
 
 16
 Unlike the cases the Averys rely on, in which Sixth Amendment violations were found, e.g., United States v. Oates, 560 F.2d 45, 84 (2d Cir. 1977); State v. Albert, 565 P.2d 534, 537 (Ariz. App. 1977); State v. Jackson, 215 S.E.2d 123, 130 (N.C. 1975), the affidavits here did not come into evidence, nor did Toomey quote their contents at trial. For that matter, all the identified affiants testified at trial and were subject to cross-examination. The jury had full opportunity to observe their demeanor and determine their credibility. See State v. McKenna, 224 S.E.2d 537, 550-51 (N.C.), judgment vacated on other grounds, 429 U.S. 912 (1976).
 
 
 17
 The net effect of Toomey's testimony was that probable cause for the search warrant was based in part on affidavits. In fact, Toomey's testimony was only a minor part of the Government's case and was unrelated to the disputed issues at trial: whether Darrell acted with criminal intent and the extent of Jeffrey's knowledge and involvement. There was overwhelming evidence against the brothers on these issues. In sum, we find no error in the admission of Toomey's testimony.
 
 III
 
 18
 Turning to Jeffrey Avery's individual arguments, we first consider his contention that the jury's verdict should be overturned because of its inconsistency. In its verdict, the jury acquitted Jeffrey of the substantive offense of willfully aiding or assisting in the preparation and presentation of Printing Equipment's false tax return in violation of 26 U.S.C. § 7206(2).[6] It convicted Jeffrey under 18 U.S.C. § 371[7] of conspiring with Darrell to violate 26 U.S.C. §§ 7201 and 7206(2) by "impeding, impairing, obstructing, and defeating" the government's collection of Printing Equipment's income taxes.
 
 
 19
 It is a well-settled principle that a conspiracy and the completed substantive offense are two separate crimes. Iannelli v. United States, 420 U.S. 770, 777-82 (1975). The crimes do not merge. Id.; United States v. Walker, 796 F.2d 43, 46 (4th Cir. 1986). Of course, in some cases a defendant's innocence of a substantive offense may suggest that he did not conspire to commit the offense, but this is not always true. See United States v. Morales, 677 F.2d 1, 2 (1st Cir. 1982). Here, Jeffrey's innocence of the substantive offense of aiding in the preparation of Printing Equipment's false return did not necessarily absolve him from the conspiracy charge.
 
 
 20
 It is true that the preparation of the false tax return for Printing Equipment was one of the overt acts alleged in the conspiracy count of the indictment. Significantly, however, there were four other overt acts alleged: procuring Printing Equipment's signature on an agreement for the purchase of Robinson Yacht stock; and on three separate occasions, accepting Printing Equipment's checks totaling $33,000 for the stock. At trial, there was sufficient evidence from which the jury could have found Jeffrey responsible for any one of these overt acts.
 
 
 21
 Extensive testimony at trial detailed Jeffrey's involvement with the Printing Company transaction. The government's evidence showed that Jeffrey kept Printing Equipment's books, had frequent contact with the company, and deposited two of its stock purchase payments.
 
 
 22
 Evidence also showed that Jeffrey told the owners of Printing Equipment about arrangements for Robinson Yacht loss deductions made for six or seven other Avery clients. From the trial evidence, the jury easily could have concluded that a conspiracy existed and that Jeffrey knew about it, voluntarily joined it, and participated in at least one overt act in furtherance of the conspiracy. See United States v. Bell, 954 F.2d 232, 236 (4th Cir. 1992).
 
 
 23
 For that matter, we will not set aside a conviction simply because a guilty verdict on one count cannot be reconciled with an acquittal on another count. United States v. Thomas, 900 F.2d 37, 40 (4th Cir. 1990). As we said in Thomas, "[c]riminal defendants are afforded protection against jury irrationality or error by independent review of the sufficiency of the evidence." Id. (quotations omitted); accord United States v. Powell, 469 U.S. 57, 67 (1984).[8]
 
 
 24
 Finally, Jeffrey urges that the district court should have departed downward in imposing his sentence under the Sentencing Guidelines because he was a minimal or, at most, a minor participant in the conspiracy. Jeffrey maintains that he acted only as a bookkeeper for his family business, that his brother Darrell was the primary contact for most of Avery Financial's clients, and that he did not understand or participate in the conspiracy. In our view, the district court acted well within its discretion in refusing to depart downward on Jeffrey's sentence.[9]
 
 
 25
 Under section 3B1.2 of the Sentencing Guidelines, the court may reduce the offense level of a minimal or minor participant in a conspiracy. Subsection 3B1.2(a) provides for a four-level decrease in the offense level of a minimal participant in the criminal activity. This provision is intended to apply to defendants "who are plainly among the least culpable of those involved in the conduct of the group." United States Sentencing Commission, Guidelines Manual § 3B1.2, comment. (n.1). Key to application of this provision is the defendant's lack of understanding of the scope, structure, and activities of the conspiracy. Id. In determining whether to depart downward, the sentencing court must not only compare "the acts of each participant in relation to the relevant conduct for which the participant is held accountable, but also ... measur[e] each participant's individual acts and relative culpability against the elements of the offense of conviction." United States v. Daughtrey, 874 F.2d 213, 216 (4th Cir. 1989). "The critical inquiry is thus not just whether the defendant has done fewer 'bad acts' than his codefendants, but whether the defendant's conduct is material or essential to committing the offense." United States v. Palinkas, 938 F.2d 456, 460 (4th Cir. 1991), vacated sub nom. Kochekian v. United States, 112 S. Ct. 1464, opinion reinstated on remand, 977 F.2d 905 (4th Cir. 1992). The allowable downward adjustment for a minor participant is two offense levels. U.S.S.G. § 3B1.2(b). "[A] minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." Id. § 3B1.2, comment. (n.3).
 
 
 26
 The district court found that Jeffrey was a key participant in the sale of Robinson Yacht's losses to Printing Equipment. Jeffrey contends that this finding was clearly erroneous. " 'A finding is "clearly erroneous" when although there is evidence to support it, [we are] ... left with the definite and firm conviction that a mistake has been committed.' " Palinkas, 938 F.2d at 460 (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). Jeffrey's factual argument is without support.
 
 
 27
 At trial, McKee, an owner of Printing Equipment, testified that Jeffrey told him the purchase of Robinson Yacht stock was "completely legal" and "would wipe out [Printing Equipment's] tax liability for that year." McKee further testified that he and Jeffrey discussed a stock purchase contract between Robinson Yacht and Printing Equipment; that Jeffrey procured his signature on Printing Equipment's tax return; and that he and Brown, Printing Equipment's other owner, "were talking to both [defendants] the whole time this was going on." Brown also testified that Jeffrey told them acquiring Robinson Yacht's losses was "the only way" Printing Equipment could avoid a large tax bill. Moreover, Jeffrey deposited two of Printing Equipment's payments into an account opened by him and for which he had sole signatory authority. Finally, the IRS recorded Jeffrey telling Brown and McKee that the $33,000 used to purchase Robinson Yacht stock was "money well spent" because it saved them $58,000 in taxes, that the transaction was completely legal, and that another client who did the same thing passed an audit.
 
 
 28
 It is true that the evidence proved that Darrell took part in many more transactions than Jeffrey, but it also showed Jeffrey's considerable involvement in the Printing Equipment transaction, based on his full understanding of the scope, structure, and activities of the conspiracy. See U.S.S.G. § 3B1.2, comment. (n.1). The district court's determination that Jeffrey was not a minimal or minor participant in the conspiracy was not clearly erroneous. See United States v. Tholl, 895 F.2d 1178, 1186 (7th Cir. 1990).
 
 
 29
 We therefore affirm the opinion of the district court.
 
 AFFIRMED
 
 
 [1]
 Robinson Yacht is a Subchapter S corporation; thus the Averys represented to prospective stock purchasers that they could offset Robinson Yacht's losses against their individual tax liabilities
 
 
 [2]
 The purchasers of Robinson Yacht's stock were: Gerald and Evelyn Ferguson, Erroll and Elizabeth Sult, Billy and Ann Watts, Theodore and Peggy Rink, Thomas Dankson, Harold McKee, and Ralph Brown
 
 
 [3]
 The Fergusons' 1986 return listed a $19,570 loss (for a tax savings of $6,785); the Sults' 1986 and 1987 returns listed losses of $52,350 (for tax savings of $20,093); and the Watts' 1986, 1987, and 1988 returns listed losses totalling $100,950 (for a total tax savings of approximately $35,000). Darrell also prepared, but did not file, 1985 tax returns declaring losses from Robinson Yacht for Mr. and Mrs. Rink and for Thomas Dankson
 
 
 [4]
 We have not attempted to reconcile the mathematical losses of the stock purchasers with that claimed on the fraudulent Yacht Company return-apparently the inconsistencies represent other examples of the ineptness of the transactions
 
 
 [5]
 The court instructed the jury on reasonable doubt as follows:
 Now the indictment or formal charge against the Defendant ... is not evidence of guilt as I've told you before. Indeed, the Defendant and each of them are presumed by law to be innocent. The law does not require a Defendant to prove his innocence or produce any evidence at all and no inference whatever may be drawn from the election of a Defendant not to testify. The Government has the burden of proving him guilty beyond a reasonable doubt, and if it fails to do so, you must acquit him. Thus while the Government's burden of proof is a strict or heavy burden, it is not necessary that the Defendant's guilt] (be proved beyond all possible doubt. It is only required[that]the the Government's proof exclude any reasonable doubt concerning the Defendant's guilt.
 
 
 [6]
 26 U.S.C. § 7206(2) provides:
 Any person who ... [w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document ... shall be guilty of a felony....
 
 
 [7]
 18 U.S.C. § 371 provides:
 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 
 
 [8]
 Jeffrey also mistakenly contends that Wharton's Rule, an exception to the traditional principles of conspiracy, applies here. There is absolutely no merit to this contention. Under Wharton's Rule, an agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime itself requires the participation of two people. Iannelli v. United States, 420 U.S 770, 773-74 n.5 (1975); United States v. Walker, 796 F.2d 43, 46 (4th Cir. 1986)
 
 
 [9]
 At his sentencing hearing, Jeffrey objected only to the district court's refusal to treat him as a minimal participant. On appeal, he raises, but does not discuss, the possibility of treatment as a minor participant. Our holding applies to both categories