COURT OF APPEALS OF VIRGINIA

Present:  Judges Coleman, Willis and Senior Judge Hodges
Argued at Norfolk, Virginia


ALEX THOMAS HUNT
                                          OPINION BY
v.         Record No. 1932-96-1    JUDGE SAM W. COLEMAN III
                                        AUGUST 12, 1997
COMMONWEALTH OF VIRGINIA

          FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
                   E. Everett Bagnell, Judge

          H. Woodrow Crook, Jr. (Johnnie E. Mizelle;
          Crook & Edwards, on briefs), for appellant.

          Eugene Murphy, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee.


     The defendant, Alex Thomas Hunt, was convicted by a jury of

first degree murder.  On appeal, he contends that the trial court

erred by refusing to remove a juror during the trial, by failing

to instruct the jury on second degree murder and voluntary

manslaughter, and by misapplying the Virginia Sentencing

Guidelines.  For the reasons that follow, we affirm the

defendant's conviction.

                I.  DISQUALIFICATION OF JUROR

     On the second day of trial, a juror was observed smiling and

nodding to a member of the victim's family.  Upon defense

counsel's request, the trial judge asked the jurors if anyone

knew or had a familiar relationship with members of the

appellant's family, the victim's family, or anyone in the

courtroom that would affect his or her ability to be fair and

impartial. None of the jurors responded.

The following day, one juror sent a note to the judge stating that there were "some people in this courtroom [she] used to work with." Upon questioning, this juror responded that she had seen a person in the courtroom with whom she had worked several years earlier. She told the judge that although she believed that the person was a member of the victim's family, her ability to decide the case fairly would not be affected by her prior association with the family member.

On appeal, we defer to the trial court's decision whether to retain or exclude individual venire members. See Satcher v. Commonwealth, 244 Va. 220, 236, 421 S.E.2d 821, 831 (1992), cert. denied, 507 U.S. 933 (1993).

> The standard to be applied by the trial court in determining whether to retain a venireman on the jury panel is whether his answers during voir dire examination indicate to the court something that "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."

Id. (citations omitted). The same standard applies when a juror's impartiality is challenged mid-trial. We will reverse the trial court's decision only for an abuse of discretion.

In view of the juror's responses to the judge's questions and the juror's assurance that her prior association at work with the victim's family member would not affect her impartiality, the trial judge did not err by refusing to remove the juror.

## II.  JURY INSTRUCTIONS

"When the denial of jury instructions is challenged on appeal, the court must determine . . . [whether] the instructions cover all issues which the evidence fairly raises."  Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479 (1993).  "We are bound by the principle that the accused is entitled, on request, to have the jury instructed on a lesser included offense that is supported by more than a 'scintilla of evidence' in the record."  Bunn v. Commonwealth, 21 Va. App. 593, 599, 466 S.E.2d 744, 746 (1996).  Thus, where credible evidence exists that would support giving the jury an instruction on a particular theory of the case, the trial court's failure to give the instruction constitutes reversible error.  McClung v. Commonwealth, 215 Va. 654, 657, 212 S.E.2d 401, 403 (1975); Martin v. Commonwealth, 13 Va. App. 524, 528, 414 S.E.2d 401, 403 (1992) (en banc).

"In determining whether to instruct the jury on a lesser-included offense, the evidence must be viewed in the light most favorable to the accused's theory of the case."  Lea, 16 Va. App. at 305, 429 S.E.2d at 480.  To justify the trial court's refusal to instruct on second degree murder or voluntary manslaughter, every version of the evidence must prove, to the exclusion of any other theory, that the defendant wilfully, intentionally, and with premeditation killed the victim or that he aided and abetted the murderers, knowing that one of them intended to kill the victim.  If any version of the evidence

would support a finding that the defendant acted with malice in killing the victim, but that he did not have the premeditated intent to kill his victim or that he was not aiding or abetting the murderers knowing that they intended to kill the victim, then he would be entitled to a second degree murder instruction and possibly a voluntary manslaughter instruction. Regardless of the defendant's actions and participation prior to the beating and the murder, under every version of the evidence, after blows were exchanged the defendant joined with the two murderers beating, choking, and striking the victim knowing that they intended to kill him, and the defendant then either threw or aided and abetted the others in throwing the victim in the river.

Viewing the evidence in the light most favorable to the defendant's claim that the trial court should have instructed on second degree murder and voluntary manslaughter, the evidence proved that Truvelle Faulk and Lance Holland, unbeknownst to the defendant, robbed and abducted the victim from a local 7-Eleven store. Faulk and Holland took the victim's car and placed the victim in the trunk. They then drove the car to Holland's home, where the defendant was waiting for a ride to his girlfriend's house. Although Faulk said that the defendant drove the car after they picked him up, the defendant denied driving and testified that Faulk drove the car. As the three men drove around looking for drugs, Faulk and Holland disclosed to the defendant for the first time that they had robbed a man and had

- 4 -

him in the trunk of the car.  Because the defendant did not believe them, they opened the trunk and showed the victim to the defendant.

As they were driving to the defendant's girlfriend's home, Holland announced that he wanted to kill the victim.  Faulk suggested that they beat the victim but not kill him.  Both Faulk and the defendant testified that the defendant, at that time, repeatedly tried to convince Faulk and Holland not to kill anyone and to let the victim go.  The defendant further testified that, once Faulk and Holland began talking about killing the victim, he asked them to take him home.  Instead, they drove to a deserted area that Faulk suggested and let the victim out of the trunk.

Faulk testified that when the victim got out of the trunk, the victim struck the defendant, causing the defendant to fall back against the car.  In response, the defendant hit the victim on the side of the head with a rock.  Had the defendant killed the victim at that time or continued to engage in combat with him until the victim was killed, the trial judge would have been required to instruct the jury on second degree murder and on voluntary manslaughter.  However, under any theory that required giving a homicide instruction, the evidence proved that at that time all three men began beating the victim, punching and kicking him repeatedly.  One of the men then took a yellow cord from the trunk of the car and put it around the victim's neck.  Another used an umbrella found in the car to beat the victim.  Faulk

testified that all three men took turns holding the cord and beating the victim with the umbrella handle.  Faulk testified that after they stopped beating the victim, he and the defendant carried the victim to a nearby railroad trestle and pushed him into the river.

When the defendant was initially questioned by police, he denied being with Faulk and Holland when the murder had occurred.  He later told the police that Faulk and Holland had picked him up in the victim's car, that they told him that they had the victim in the trunk, and that Holland had said he wanted to kill the victim.  The defendant told the police that he repeatedly urged Faulk and Holland to let the victim go, but they drove to a remote area and told him they were going to kill the victim with or without his help.  At that point, according to the defendant, they began to beat the victim.  The defendant admitted to the deputy that he kicked the victim a few times.  He testified that as Faulk and Holland were throwing the victim into the river, he was turning the car around.

Charles Ennis testified that he saw the defendant the day after the killing and that the defendant had an injured hand. The defendant initially told Ennis that he had been in a fight at the 7-Eleven store and hurt his hand, but he later told Ennis that he, Faulk, and Holland had killed a man and that he had hurt his hand by hitting the victim.

The defendant testified that when Holland and Faulk began

talking about killing the victim, he told them to take him home. Instead, they drove to a remote location, let the man out of the trunk and told him he could go. The defendant testified that the victim started walking away when Holland and Faulk tackled him and began beating him. According to the defendant, he did not participate in the beating or in throwing the victim into the river. Although the defendant denied any participation whatsoever, his version of the facts is not that which we consider here to support a second degree murder or voluntary manslaughter instruction.

"[A]n instruction on murder in the second degree should not be given unless it [is] warranted by the evidence before the jury." Wooden v. Commonwealth, 208 Va. 629, 634, 159 S.E.2d 623, 627 (1968). Similarly, an involuntary manslaughter instruction must be warranted by the evidence. The instructions must be supported by more than a mere scintilla of evidence, which is an issue to be resolved based on the facts of each case. See Buchanan v. Commonwealth, 238 Va. 389, 409, 384 S.E.2d 757, 769 (1989); Brandau v. Commonwealth, 16 Va. App. 408, 411-12, 430 S.E.2d 563, 565 (1993).

Even when viewed in the light most favorable to the defendant, the evidence does not support giving an instruction for second degree murder or voluntary manslaughter. Had the jury believed the defendant's version of events in its entirety, the only verdict they could have reached would have been not guilty.

If the jury had believed the Commonwealth's witnesses in their entirety, the only verdict they could have returned was guilty of first degree murder.  See Wooden, 208 Va. at 634-35, 159 S.E.2d at 627; Frye v. Commonwealth, 231 Va. 370, 388-89, 345 S.E.2d 267, 280-81 (1986).  However, in determining whether the defendant is entitled to a jury instruction, we must review all the evidence and determine whether a version of the facts exists that the jury could have believed which would support a finding that the defendant participated in the homicide but that his participation did not rise to the level of a wilful, premeditated killing of the victim.

Although the evidence could support a finding that the defendant did not participate in the robbery and initially tried to convince Faulk and Holland not to kill the victim, the uncontradicted evidence proved that after the victim struck the defendant he assisted Faulk and Holland in beating the victim knowing that one of them intended to kill the victim.  The defendant may have been entitled to a second degree murder or voluntary manslaughter instruction had his initial response killed the victim; nevertheless, when the defendant joined Faulk and Holland in striking and kicking the victim, choking him with a cord, and striking him with an umbrella, knowing that Faulk or Holland intended to kill him, the only theory supported by that evidence is that the defendant aided and abetted first degree murder.  Furthermore, assuming that Faulk and Holland were the

- 8 -

two who threw the victim into the river, and that the defendant knew or thought that the victim was alive at the time, the defendant was still an accomplice in the beating and aided and abetted in the final act of murder by readying the car to flee the murder scene. Thus, as a matter of law the defendant became a principal in the second degree to first degree murder because he was present, he knew the others intended to kill the victim and he aided, abetted, and encouraged their commission of the crime. See Wooden, 208 Va. at 634-35, 159 S.E.2d at 627; Pugliese v. Commonwealth, 16 Va. App. 82, 93, 428 S.E.2d 16, 24 (1993); Rollston v. Commonwealth, 11 Va. App. 535, 539, 399 S.E.2d 823, 825 (1991) ("When the alleged accomplice is actually present and performs overt acts of assistance or encouragement, he has communicated to the perpetrator his willingness to have the crime proceed and has demonstrated that he shares the criminal intent of the perpetrator.") (quoting R. Groot, Criminal Offenses and Defenses in Virginia 183 (1984)). Once the defendant struck the victim and the other two men joined in, the only conclusion the fact finder could draw is that the defendant was assisting in the premeditated murder of the victim. Whether the defendant personally formed an intent to kill the victim or initially acted in the heat of passion when he struck the victim is irrelevant. The uncontradicted evidence proved that he assisted the other two men, who intended to kill the victim, in beating and choking him and in throwing him into the river.

Thus, the trial court did not err by refusing to instruct the jury on second degree murder and voluntary manslaughter.

### III.  SENTENCING GUIDELINES

Finally, we address the defendant's contention that the trial court misapplied the Virginia Sentencing Guidelines when sentencing him to life in prison.

The sentencing guidelines are not binding on the trial judge.  Belcher v. Commonwealth, 17 Va. App. 44, 45, 435 S.E.2d 160, 161 (1993).  Rather, they are a tool designed to assist the judge in fixing an appropriate punishment.  Id.  It is well-settled that "[i]f the sentence was within the range set by the Legislature [for the crime with which the defendant was convicted], an appellate court will not interfere with the judgment."  Hudson v. Commonwealth, 10 Va. App. 158, 160-61, 390 S.E.2d 509, 510 (1990).  Moreover, Code § 19.2-298.01(F) states: "The failure to follow any or all the provisions of [the sentencing guidelines] or the failure to follow any or all the provisions of this section in the prescribed manner shall not be reviewable on appeal or the basis of any other post-conviction relief."

Thus, we will not interfere with the trial court's judgment fixing sentence.

Accordingly, we affirm the defendant's conviction for first degree murder.

Affirmed.