**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PENNY SUE SAYLOR,
Petitioner-Appellant,

v.                                                                No. 96-6659

VANESSA CRAWFORD, Warden,
Respondent-Appellee.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CA-95-727-R)

Argued: January 26, 1998

Decided: June 5, 1998

Before LUTTIG, Circuit Judge, PHILLIPS, Senior Circuit Judge,
and MORGAN, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael Morchower, MORCHOWER, LUXTON &
WHALEY, Richmond, Virginia, for Appellant. Linwood Theodore
Wells, Jr., Assistant Attorney General, OFFICE OF THE ATTOR-
NEY GENERAL, Richmond, Virginia, for Appellee. **ON BRIEF:**
Lee W. Kilduff, MORCHOWER, LUXTON & WHALEY, Rich-
mond, Virginia, for Appellant. Richard Cullen, Attorney General of

Virginia, OFFICE OF THE ATTORNEY GENERAL, Richmond,
Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Penny Sue Saylor appeals a decision of the district court denying
her petition for a writ of habeas corpus pursuant to 28 U.S.C.A.
§ 2254 (West. 1994) (pre-Antiterrorism and Effective Death Penalty
Act of 1996).**1** Saylor seeks to overturn her nine Virginia state convic-
tions, alleging that she received ineffective assistance of counsel. Say-
lor contends that the district court erred in refusing to grant her an
evidentiary hearing on her ineffective assistance of counsel claims
and instead relying upon the record compiled at the state court evi-
dentiary hearing to reject her claims. For the reasons stated below, we
affirm the judgment of the district court.

I.

On the night of January 21, 1990, Jeffrey Chadwell shot and killed
Paul Jones during an attempted burglary at Jones's residence in Lee
County, Virginia. In testimony at her state habeas evidentiary hearing,
Penny Sue Saylor admitted that she drove Chadwell, her boyfriend,
to Jones's home, waited in the getaway truck while Chadwell robbed

_____

**1** On June 23, 1997, the United States Supreme Court ruled that the new
habeas standards of review promulgated in the Antiterrorism and Effec-
tive Death Penalty Act of 1996 (AEDPA) do not apply retroactively to
habeas corpus petitions pending in federal court prior to the enactment
of the AEDPA. See Lindh v. Murphy, #6D6D 6D# U.S. ___, 117 S.Ct. 2059,
2068 (1997). Because Saylor's case was pending before the AEDPA
took effect on April 26, 1996, we apply the relevant pre-1996 statute. See
id.

2

and murdered Jones and then drove Chadwell from the murder scene. In at least one written statement, Saylor also admitted that she knew Chadwell planned to kill Jones. J.A. at 102.

On August 16, 1990, a Lee County jury convicted Chadwell, the triggerman, on charges of second-degree murder, breaking and entering with the intent to commit larceny, and the use of a firearm during the commission of murder. The jury found him not guilty of breaking and entering with the intent to commit murder. The Lee County Circuit Court, following the jury's recommendation, sentenced Chadwell to fourteen years in prison on these convictions.

In June of 1990, a Lee County grand jury indicted Saylor on one count of first degree murder, four counts of breaking and entering, three counts of grand larceny, one count of use of a firearm during the commission of a felony, and one count of burglary.[2] The Lee County Circuit Court appointed two attorneys, Birg Sergent, an experienced trial lawyer, and Tammy McElyea,[3] a newly licensed lawyer, to represent Saylor. After the conclusion of Chadwell's trial and sentencing hearing, Saylor's attorneys advised her to plead guilty to the charges against her, citing a number of factors including her prior inconsistent statements, her admissions to law enforcement officers, her poor performance in a mock cross-examination, the uncertainties associated with a jury trial and, most importantly, their belief that Saylor would receive a lower sentence than that received by the triggerman, Chadwell. On September 19, 1990, the day before her trial was to begin, Saylor pled guilty to the nine charges pending against her.[4] The court sentenced her to a term of life, plus thirty-seven years, in prison.

After receiving the lengthy prison term which greatly exceeded that of her co-defendant, Saylor filed a petition for writ of habeas corpus in the Circuit Court of Lee County on August 12, 1992. In the peti-

_____

[2] Six of the breaking and entering and grand larceny charges involved crimes committed prior to the incident at Jones' home.
[3] She is currently the Lee County Commonwealth's Attorney.
[4] At Saylor's guilty plea hearing, the prosecution nolle prossed the burglary charge.

tion, she claimed that she was denied effective assistance of counsel prior to her pleas of guilty and that her guilty pleas were not voluntary. On August 18, 1993, the Lee County Circuit Court held an evidentiary hearing to determine the merits of Saylor's claims. At that hearing, Saylor's present counsel called four witnesses: Penny Saylor, Lloyd Saylor, Jr., Joyce Saylor and Jimmy Seals. The government called McElyea as its only witness. The Lee County Circuit Court, after considering the evidence, determined that Saylor had received effective assistance and denied her petition. Saylor then appealed that decision; the Virginia Supreme Court denied her appeal on March 9, 1995.

On March 1, 1996, Saylor appeared by counsel before the District Court for the Western District of Virginia seeking a writ of habeas corpus pursuant to 28 U.S.C.A. § 2254 (pre-AEDPA). By order filed March 26, 1996, the district court denied her petition. J.A. at 311-319. Relying upon the facts adduced at the evidentiary hearing before the Lee County Circuit Court, the district court found that counsel's performance in advising Saylor to plead guilty was reasonable under the circumstances. The Court further found that her guilty plea was knowing and voluntary.[5]

Saylor noted a timely appeal of the district court's denial of her § 2254 motion.

II.

Saylor challenges the assistance provided by her counsel. First, she argues that her attorneys erred in advising her to plead guilty when the prosecution had not offered a plea agreement. Second, Saylor argues that her attorneys failed to determine that the evidence against her was insufficient to support convictions for first-degree murder, grand larceny and breaking and entering. Third, Saylor asserts that her attorneys failed to adequately prepare for her defense. Fourth, Saylor asserts that she should have been advised to testify against her co-defendant, Chadwell. Fifth, Saylor argues her counsel erroneously

_____

[5] Although Saylor challenged the voluntariness of her plea in her habeas petition to the district court, she does not raise that claim on appeal.

4

failed to timely move for a change of venue. Finally, she alleges that counsel erroneously believed the sentencing judge would depart from the Virginia sentencing guidelines.

III.

A habeas petitioner is entitled to an evidentiary hearing in federal court "unless the facts were resolved in a prior state court hearing." Becton v. Barnett, 920 F.2d 1190, 1192 (4th Cir. 1990). To receive a federal habeas hearing, Saylor must show that she can satisfy one of the factors enumerated in Townsend v. Sain , 372 U.S. 293, 313 (1963), overruled on other grounds, Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992). See Bennett v. Angelone, 92 F.3d 1336, 1347 n.10 (4th Cir. 1996). When analyzing a prisoner's habeas petition, we review de novo the state court's determinations of questions of law and mixed questions of law and fact. Noland v. French, 134 F.3d 208, 213 (4th Cir. 1998).

We presume, however, that the state court's factual findings are correct and binding, if they were made after a full, fair and adequate hearing on the merits. See 28 U.S.C.A. § 2254(d) (pre-AEDPA); see also Sumner v. Mata, 449 U.S. 539, 546-47 (1981). Moreover, the petitioner bears the burden of establishing, by convincing evidence, that a state court's factual determinations were erroneous. See 28 U.S.C.A. § 2254(d) (pre-AEDPA); see also Sumner, 449 U.S. at 550.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court articulated a two-prong standard to evaluate claims of ineffective assistance of counsel on collateral review. First, the defendant must establish that the attorney's performance was deficient; and, second, that the attorney's deficiency prejudiced the defendant. Id. at 687. Failure to meet either prong defeats the petitioner's ineffective assistance of counsel claim. Id. at 700. The court need not address both components of the test if the defendant makes an insufficient showing on one part of the test. Id. at 697.

The performance prong of the Strickland test is satisfied if an attorney advises a client to plead guilty and that advice is "within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson,

5

397 U.S. 759, 771 (1970)). To satisfy Strickland 's prejudice prong, Saylor "must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

A reviewing court must be "highly deferential" in assuming that counsel's conduct was reasonable under the circumstances. Strickland, 466 U.S. at 689. In addition, this court must evaluate counsel's performance from counsel's perspective at the time of the alleged deficiency to eliminate "the distorting effects of hindsight." Id. With these principles in mind, we will address Saylor's claims in turn.

A.

Saylor first argues that her counsel was ineffective in encouraging her to plead guilty to eight felony charges, including first-degree murder, without the existence of a plea bargain offered by the prosecution. She argues that testimony from three expert witnesses, in the form of depositions introduced at her 1993 state habeas corpus evidentiary hearing, establishes that her counsel's recommendation of a guilty plea in this first-degree murder case constitutes ineffective assistance of counsel.

We disagree with Saylor that counsel erred in advising her to plead guilty in the absence of a plea agreement. Defense counsel's advice to plead guilty was a strategic decision. The prosecutor in Saylor's case refused to make a plea bargain offer, so Saylor's attorneys were faced with the choices of advising her either to proceed to trial in the face of substantial evidence against her or to plead guilty in the hopes that she would receive a lenient sentence. At the state court evidentiary hearing on Saylor's habeas claims, Saylor's trial counsel advanced many sound reasons for advising her to plead guilty including her inconsistent statements, the likely prejudicial effect on the jury of her use of illegal drugs, and the likelihood that Saylor would not receive a sentence in excess of that received by Chadwell. While the resulting sentence was not what her attorneys may have expected, their advice to her was reasonable under the circumstances of the case. We agree with district judge's assessment that "the fact that they were wrong does not mean that they were ineffective. It just means

6

that they were wrong." J.A. at 299. We find that counsel's performance as to this issue falls within the range of reasonable competence, making it unnecessary to address the prejudice prong of Strickland.

B.

Saylor next argues that her counsel advised her to plead guilty even though the evidence was insufficient to support convictions against her. Saylor argues that she was, at most, an accessory after the fact to murder. She also alleges that her counsel erroneously encouraged her to plead guilty, as a principal in the first degree, to grand larceny and breaking and entering counts even though she was not present when those crimes occurred.

We believe that the evidence was sufficient to support defense counsel's belief that a jury would likely convict Saylor on all counts. To support a conviction, "the evidence, when viewed in the light most favorable to the government, must be sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt." United States v. Brewer, 1 F.3d 1430, 1437 (4th Cir. 1993) (citation omitted).

While Saylor argues that she was guilty, at most, of being an accessory to murder after the fact, the facts establish that a reasonable jury could have found her guilty as a principal in the second-degree and thus liable for first degree murder. Under Virginia law, one who is present, aiding and abetting a murder, but who does not actually fire the fatal shot, is a principal in the second degree and may be convicted of first-degree murder. See Frye v. Commonwealth, 345 S.E.2d 267, 280 (Va. 1986); Riddick v. Commonwealth, 308 S.E.2d 117, 119 (Va. 1983); Va. Code Ann. § 18.2-18 (Michie Supp. 1997). Principals in the second degree are subject to the same punishment to which principals in the first degree are exposed. See Va. Code Ann. § 18.2-18. The record reveals that Saylor's attorneys explained the distinctions and similarities between a principal in the first degree and a principal in the second degree to Saylor. See J.A. at 123-24.

Saylor admitted in at least one written statement that she knew that Chadwell intended to kill Jones. Saylor also admitted that she was

7

positioned close to the murder scene in a getaway vehicle when the murder took place. Thereafter, she drove the triggerman, Chadwell, from the scene. These facts clearly establish a likelihood that a reasonable trier of fact would convict Saylor on the murder count as a principal in the second degree.

Saylor's argument that there was insufficient evidence to convict her on the burglary charges also rings hollow. Saylor admitted to law enforcement officers that she sat in the truck and waited for Chadwell to break into the home and then served as his getaway driver. Accordingly, there is sufficient evidence to prove that Saylor was, at the very least, a principal in the second-degree to burglary.

Saylor has failed to build an adequate factual record regarding the burglaries that she participated in prior to the murder and burglary at Jones' home. Because Saylor bore the burden of establishing such facts at the state evidentiary hearing on her habeas petition, Saylor is foreclosed from now arguing that she should receive a second opportunity to develop such facts. Moreover, Saylor makes only a general allegation as to the insufficiency of the evidence of those prior burglaries; she does not adequately raise an issue as to whether any particular burglary charge against her was unsupported by the evidence.

C.

Saylor argues that her attorneys advised her to plead guilty because of "irrationality, inexperience and lack of preparation." She alleges that her attorneys placed too much emphasis on a mock cross-examination which McElyea conducted and chides the senior trial counsel, Sergent, for failing to attend the mock cross-examination.[6] She argues that her counsel should have attended Chadwell's trial to determine what evidence might be used against her at trial. She also argues that her attorneys' belief that the judge would impose a minimal sentence upon her was unsupported by fact or logic.

_____

[6] At one point, Saylor argues that "Ms. McElyea placed too much emphasis on this mock cross-examination," but then on the next page contradicts herself and alleges that the mock cross-examination is "arguably the most crucial part of a jury trial." See Petitioner's Brief at 11-12.

8

We believe that Saylor's attorneys made a logical decision in advising her to plead guilty. Her attorneys weighed the evidence against her, the adverse community sentiment, the refusal of the prosecutor to make an offer for a plea agreement and his insistence upon a jury trial, the inability of Saylor to withstand cross-examination if she were to testify at trial, and the sentence received by her co-defendant, Chadwell, and reached the conclusion that their best avenue of minimizing her exposure to a lengthy sentence was for her to enter guilty pleas to all counts of the indictment. Under Strickland, Saylor's attorneys acted within the range of professional competence in making their assessment and advising Saylor to plead guilty. See Strickland, 466 at 689.

Moreover, we find that Saylor's attorneys adequately prepared to defend Saylor at trial, if necessary. At least one of her attorneys attended portions of Chadwell's trial, both of her attorneys met with Saylor on a number of occasions to discuss her case with her, and her attorneys maintained contact with the Commonwealth Attorney's office in an effort to elicit a plea bargain offer from the prosecutor. Such efforts, in the face of the Commonwealth's significant evidence against Saylor, were reasonable.

D.

Saylor argues that she was wrongly advised not to testify against Chadwell at his trial. She hypothesizes that she may have received a lighter sentence if she had testified against Chadwell.

At the time that Chadwell was tried, however, Saylor had not decided to plead guilty. Testifying against Chadwell at that point would have implicated Saylor and nullified any prospect she may have had of convincing a jury that she was innocent of the charges against her. Speculating that Saylor should have testified against Chadwell is merely hindsight that is not permitted by Strickland. See Strickland, 466 U.S. at 689. Moreover, Saylor is unable to show that she would have received a more lenient sentence by testifying against Chadwell. Therefore, we reject Saylor's complaint that her attorneys ineffectively advised her not to testify against Chadwell.

9

E.

Saylor argues that defense counsel knew that Paul Jones, the murdered victim, was a respected member of the community and that the community considered Chadwell's fourteen year sentence inadequate. She argues that defense counsel should have realized that the sentencing judge would feel compelled to make an example of her because her co-defendant had received a relatively light sentence. Accordingly, Saylor argues that her defense counsel should have made a motion for a change of venue or for extensive voir dire of potential jury members if the case had proceeded to trial.

Since the case did not proceed to trial, we cannot address whether defense counsel should have used extensive voir dire. Instead, Saylor seeks to have us find that her attorneys should have made a motion for a change of venue.[7]

Saylor's attorneys did make a motion for a change of venue, but it was not to be argued until the day of trial. J.A. at 188. Given that Saylor pled guilty, the only practical significance of a change of venue may have been to change the sentencing judge. Saylor's argument would require this Court to find that the sentencing judge was prejudiced by community sentiment. Because Saylor has failed to present even a scintilla of evidence questioning the sentencing judge's impartiality, we reject this ground of attack.

F.

Finally, Saylor argues that her attorneys erred in not realizing that the judge would sentence her within the state sentencing guidelines for her crime, a range of 93 years to 186 years and 8 months. She argues that an expectation that the sentencing judge would substantially depart from these guidelines was unreasonable.

The evidence adduced at the state court evidentiary hearing reveals that Saylor's attorneys discussed the Virginia sentencing guidelines

_____

[7] We note that the same "vindictive" community from which Saylor argues the trial should have been moved, imposed only a fourteen year sentence on the triggerman, Chadwell.

and their application with Saylor. Virginia courts have repeatedly noted the voluntary nature of the Virginia state sentencing guidelines. See Hunt v. Commonwealth, 488 S.E.2d 672, 677 (Va. Ct. App. 1997); Belcher v. Commonwealth, 435 S.E.2d 160, 161 (Va. Ct. App. 1993). Moreover, under Virginia statutory law, a sentencing judge's failure to follow the guidelines is not the basis for an appeal or other post-conviction relief. See Va. Code Ann.§ 19.2-298.01(F) (Michie Supp. 1997).

Saylor's attorneys had a reasonable expectation, given her co-defendant's lenient sentence, that the sentencing judge would consider the circumstances surrounding her case and exercise his discretion to depart from the guidelines and issue a substantially lower sentence than the guidelines recommended. Their estimation of her potential punishment was a reasoned estimate, not a guarantee to Saylor that she would receive a sentence comparable to that given Chadwell. Furthermore, Saylor proffered to the trial court, at her guilty plea hearing, that she understood sentencing was within the court's discretion. Given that Saylor's attorney's discussed with her the potential application of the sentencing guidelines to her case, their performance was reasonable.

IV.

Because the habeas evidentiary hearing conducted by the state court adequately addressed the factual objections raised here by Saylor, no new evidentiary hearing is warranted; accordingly, we affirm the denial of § 2254 relief.

AFFIRMED

11