COURT OF APPEALS OF VIRGINIA

Present:  Judges Athey, Chaney and Raphael
Argued at Winchester, Virginia

MICHAEL JAMES HETLE

MEMORANDUM OPINION* BY
v.        Record No. 0304-22-4        JUDGE VERNIDA R. CHANEY
FEBRUARY 14, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

(George L. Freeman, IV; The Law Offices of George L. Freeman,
IV, on brief), for appellant.  Appellant submitting on brief.

Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

A jury in the Circuit Court of Fairfax County (circuit court) found Michael James Hetle

(Hetle) guilty of first-degree murder, in violation of Code § 18.2-32, and use of a firearm in the

commission of murder, in violation of Code § 18.2-53.1.  The circuit court sentenced Hetle to

incarceration for life on the murder conviction and three years of incarceration on the firearm

conviction.  On appeal, Hetle contends that the circuit court erred in (1) denying his motion to

dismiss a juror who observed "apparent misconduct" by a trial spectator, (2) admitting into evidence

"intended confidential communications" between Hetle and his wife, (3) barring Hetle from

testifying to what he told a neighbor about feeling physically threatened after recent encounters with

the victim, (4) allowing the Commonwealth to cross-examine Hetle about prior allegations of racial

bias, and (5) admitting into evidence Hetle's son's testimony about Hetle's use of racial slurs in

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

reference to the victim and his family. Finding no reversible error, this Court affirms Hetle's convictions.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party" in the circuit court. *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). We "regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Id.* (citing *Gerald*, 295 Va. at 473).

I. Hetle's Relationship with the Victim

Hetle had a contentious relationship with his neighbor, Javon Prather, who lived next door to Hetle's townhouse in Fairfax County. From September 2018 to March 2020, Hetle made many complaints about Mr. Prather and his wife to their homeowners' association and the police. Hetle complained about public intoxication, noise, trespass, and vandalism, among other grievances. In March 2019, Hetle alleged that Mrs. Prather threw glass bottles and other objects at him, his house, and his car. In May 2019, Hetle obtained a two-year protective order against Mrs. Prather. The protective order protected Hetle, his wife, and his teenage son. Hetle complained to his son that the Prathers were "not good for the neighborhood." Hetle's son heard him refer to Mr. Prather as a "nigger" or "negro" at least ten times. Hetle told his son that he would shoot the Prathers "if they ever come close to us or harm us." Hetle also told his son that the Prathers "should be scared of him because he'll kill them."

Hetle's wife testified that Mr. Prather had exhibited increasingly hostile behavior towards her and Hetle, such as yelling insults and obscenities at them. A video from Hetle's security camera showed Mr. Prather calling Hetle "a faggot ass fuck nigger" in September 2019, when

the police were at Hetle's home investigating a complaint against Mr. Prather. Mrs. Hetle also testified that it was not uncommon for Mr. Prather to threaten to beat up Hetle.

A neighbor of Hetle testified that the day before the shooting, Hetle told her that Mr. Prather had been increasingly aggressive towards him and recently threatened him. The neighbor advised Hetle to call the police. When the neighbor asked Hetle if he was okay, Hetle replied, "No, I'm scared. I'm scared for my life. I'm scared of Javon and I'm scared of [his wife]. I'm afraid that they're going to stab me when I get out walking." Hetle also told the neighbor that he was afraid for his own wife and son. The neighbor testified that Hetle "was genuinely scared." The neighbor again advised Hetle to call the police.

A second neighbor testified that he had once witnessed Hetle and Mr. Prather "getting ready to go to blows." He also testified that Hetle had a reputation among his neighbors for being "quiet and peaceful," but Mr. Prather's "reputation in the neighborhood was aggressive and tending toward violence."

On March 3, 2020, the day of the shooting, Hetle called the police multiple times, complaining about the Prathers. The police eventually responded to Hetle's calls for service, but the Prathers left before the police arrived. When the Prathers returned around 4:30 p.m. and resumed playing loud music from their car, Hetle called the police again. While waiting for the police to return, Hetle shouted out his window to Mr. Prather, "Yo, yo, yo! Police coming, my man!" Mr. Prather responded, "What am I doing? . . . You're a pussy. . . . You fat fuck. Fuckin' bitch. . . . I didn't do nothing wrong."

## II. The Shooting

Around 5:00 p.m. that same day, Mr. Prather walked from his home to Hetle's townhouse, knocked on Hetle's front door, stepped back from the door, and awaited a response. Hetle's son

testified that from his upstairs bedroom, he heard loud pounding on the front door that shook the walls of the house.

Moments after Mr. Prather knocked on Hetle's door, Hetle opened the door with a semi-automatic pistol pointed at Mr. Prather. Hetle immediately shot Mr. Prather twice in the chest. As Mr. Prather turned and fled down the stairs, Hetle shot him multiple times, including in the back. Hetle again shot Mr. Prather in the chest after he collapsed on Hetle's driveway.

After shooting Mr. Prather seven times, Hetle walked down the stairs, pointed the gun at the Prather's townhouse, and shouted, "You want it too?" After Mrs. Prather responded that she was calling the police, Hetle again pointed the gun in her direction and shouted, "You get the fuck out of here!"

When Hetle returned inside his townhouse, Mrs. Prather immediately went out to help Mr. Prather. As she approached Hetle's driveway, Hetle came out, pointed the gun at her, and repeatedly shouted, "Get out!" and "Get away!" Hetle returned inside his townhouse when Mrs. Prather walked up the stairs of a neighboring townhouse. Then Mrs. Prather walked back to Hetle's driveway and tried to drag her husband toward their townhouse. Hetle again came out and repeatedly shouted, "Get away!" Mrs. Prather replied, "I am. We're getting away," and she continued to drag Mr. Prather by his arms. After moving her husband's motionless body a few feet, Mrs. Prather wept and exclaimed, "You killed him!" Hetle yelled back, "Leave him!" But Mrs. Prather responded, "No! I'm not leaving my husband!," as she kept trying to move him. When Mrs. Prather stopped and tried to revive Mr. Prather, Hetle went back inside his townhouse. Mr. Prather died of gunshot wounds at the scene of the shooting.

### III.  Hetle's Jury Trial

#### A.  *Juror Note about Trial Spectator*

On the third day of trial, Juror Number 20 submitted a note informing the circuit court that she saw a trial spectator photograph some of the jurors outside the courthouse the day before.  The juror informed the circuit court that she did not communicate with anyone else about her reported observations.  The circuit court instructed the juror not to share her reported observations with anyone else.

At Hetle's request, the circuit court asked Juror Number 20 whether she believed that her observation of the trial spectator photographing jurors "might impact or affect [her] ability to be a fair and impartial juror in this case at all?"  Juror Number 20 replied, "No, sir."

Hetle moved to dismiss Juror Number 20 and replace her with one of the two alternates so that there would be "no chance that this gets back to other jurors."  The circuit court denied Hetle's request to remove and replace Juror Number 20.

#### B.  *The Hetles' Recorded Jail Telephone Call*

Over Hetle's objection, the circuit court admitted into evidence a portion of a recorded telephone call Hetle made from jail to his wife.  After Hetle's wife answered the call, an automated message stated, "This call may be recorded and is subject to monitoring at any time."  Near the beginning of the call, Hetle reminded his wife, "Just be careful; these phone calls are recorded."  Mrs. Hetle replied, "Yes, they are.  I know."

During the recorded call, Hetle's wife told him that the police took their security video camera from the front of their townhouse and the password to the camera.  Hetle responded, "Shit."  Hetle's security camera recorded the shooting of Mr. Prather and Hetle's subsequent interactions with Mrs. Prather.

Hetle objected that this phone conversation was an intended confidential communication between husband and wife. Hetle contended that while he was incarcerated, his only means of communicating with his wife was through the jail telephone system because the jail's pandemic protocols disallowed in-person visitation. Given that jail calls were the only available means of spousal communication, Hetle argued that his jail calls to his wife were protected under the spousal privilege. The circuit court overruled Hetle's objections.

*C. Hetle's Statement to a Neighbor about the Victim*

The circuit court sustained the Commonwealth's objection to Hetle's testimony that he told a neighbor the day before the shooting that Mr. Prather's recent conduct made him feel that Mr. Prather was preparing to stab him. The circuit court rejected Hetle's argument that it was an admissible "state-of-mind statement."

*D. Cross-examination about Prior Allegations of Racial Bias*

Over Hetle's objection, the circuit court allowed the Commonwealth to cross-examine Hetle about a reprimand he received as a police officer in 2001, twenty years before the shooting of Mr. Prather. The Commonwealth sought to elicit testimony that Hetle was reprimanded for (1) commenting on the nationality of an Ethiopian woman during a traffic stop, (2) stating that he would call to ask that her driving be re-tested, and (3) threatening to call INS to have her deported after she filed a complaint against him. The Commonwealth argued that the information was relevant to the element of malice. Hetle argued that the alleged events were unrelated to and attenuated from the events at issue, that the information was irrelevant to this case, that the information was unfairly prejudicial, and that the probative value of the information was "nearly none." The circuit court overruled Hetle's objections.

On cross-examination, Hetle acknowledged that when he worked as a police officer, he received a written reprimand regarding a traffic stop he made of an Ethiopian woman. Hetle denied

- 6 -

making comments about her ethnicity.  Hetle also denied stating that he would call and ask that her driving be re-tested, and he denied threatening to call INS to have her deported.

*E.  Testimony about Hetle's Use of Racial Slurs*

Over Hetle's objection, his son testified that Hetle had referred to Mr. Prather "in a racial derogatory manner."  Specifically, Hetle's son testified that at least ten times, Hetle referred to Mr. Prather using racial slurs which Hetle's son identified by spelling out the words "n-i-g-g-e-r" and "n-e-g-r-o."  Hetle objected that this evidence was unrelated to the shooting and unfairly prejudicial.  The circuit court overruled Hetle's objections, finding that "the probative value outweighs the prejudice."

ANALYSIS

I.  Denial of Motion to Dismiss Juror Number 20

Hetle contends that the circuit court erred in denying his motion to dismiss Juror Number 20 after the juror informed the court that she saw a trial spectator photographing some of the jurors outside the courthouse.  On appeal, a trial court's decision not to remove a juror for cause is reviewed for an abuse of discretion.  *See Hunt v. Commonwealth*, 25 Va. App. 395, 399 (1997).  As our Supreme Court has recognized:

> An abuse of discretion . . . can occur in three principal ways: when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

*Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011) (alteration in original) (quoting *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984)).  Additionally, a trial court "by definition abuses its discretion when it makes an error of law."  *Porter v. Commonwealth*, 276 Va. 203, 260 (2008) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)).  When deciding whether to retain a prospective juror on the jury panel or whether to remove a juror

from the jury mid-trial, a trial court must determine whether something "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Hunt*, 25 Va. App. at 399 (quoting *Satcher v. Commonwealth*, 244 Va. 220, 236 (1992)); *see also* Code § 8.01-361 ("If a juror, after he is sworn, be unable from any cause to perform his duty, the court may, in its discretion, cause another qualified juror to be sworn in his place . . . .").

In denying Hetle's request to replace Juror Number 20 with an alternate juror, the circuit court noted that the court instructed the juror not to inform any jurors that she saw someone photograph some jurors. The circuit court concluded that there was no reason to believe that Juror Number 20 would not follow this instruction. The circuit court also found that Juror Number 20 firmly expressed to the court "that it would not affect her ability to be a fair and impartial juror at all." Thus, the circuit court found "it would have no effect on her judgment as to performing her duties properly as a juror."[1] Therefore, the circuit court concluded that there was no basis to excuse Juror Number 20.

Given Juror Number 20's assurances that (i) her observation of a trial spectator photographing jurors would not affect her ability to be fair and impartial and (ii) she would not inform her fellow jurors about her observation, the circuit court did not abuse its discretion by refusing to remove Juror Number 20. As the circuit court concluded, there is no basis for finding that Juror Number 20's reported observation would prevent or substantially impair the performance of her duties as a juror in accordance with her instructions and her oath.

## II. Evidentiary Rulings

Hetle challenges several evidentiary rulings by the circuit court. "Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on

---

[1] The circuit court also asked the sheriff's office "to escort the jurors to the public parking lot for the remainder of the trial."

appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). On appeal, a trial court's evidentiary ruling will be deemed an abuse of discretion "[o]nly when reasonable jurists could not differ." *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). "[E]videntiary issues presenting a 'question of law' are 'reviewed *de novo* by this Court.'" *Id.* (quoting *Abney v. Commonwealth*, 51 Va. App. 337, 345 (2008)).

### A. Admission of the Hetles' Recorded Jail Telephone Call

Hetle contends that the circuit court erred in admitting into evidence his recorded telephone call from jail to his wife. Hetle argues that because the call was an intended confidential spousal communication, the call is protected from disclosure under Code § 19.2-271.2 and inadmissible under Virginia Rule of Evidence 2:504(b). Rule 2:504(b), which is derived from Code § 19.2-271.2, in relevant part provides:

> [I]n any criminal proceeding, a person has a privilege to refuse to disclose, and to prevent anyone else from disclosing, any confidential communication between such person and his or her spouse during their marriage . . . . For the purposes of this Rule, "confidential communication" means a communication *made privately* by a person to his or her spouse that is not intended for disclosure to any other person.

Rule 2:504(b)(2) (emphasis added). Hetle argues that his call from the jail to his wife was protected from disclosure as an intended confidential communication because the jail's telephone system provided his only means of communicating with his wife while he was incarcerated. However, Hetle cites no authority in support of this proposition, and it appears there is no such supporting authority. Indeed, the loss of privacy is an "inherent incident[ ] of confinement." *Hudson v. Palmer*, 468 U.S. 517, 528 (1984) (quoting *Bell v. Wolfish*, 441 U.S. 520, 537 (1979)).

- 9 -

The circuit court found that Hetle's recorded call to his wife was not a confidential communication because "both parties were advised that it might be recorded and subject to monitoring at any time." In addition to the automated message informing Hetle and his wife that the call was subject to monitoring and recording, Hetle told his wife that the call was being recorded and she replied, "I know." Under these circumstances, the Hetles' phone conversation does not qualify as a communication *made privately* between spouses. Even if the Hetles had no means of having private, confidential communications while Hetle was incarcerated, this circumstance would not protect their monitored communications from disclosure as if they were private, confidential communications. Thus, the recorded call was not a confidential communication as defined in Rule 2:504(b)(2) and the circuit court did not err in admitting the call into evidence.

## B. Exclusion of Hetle's Statement to His Neighbor

Hetle contends that the circuit court erred in sustaining the Commonwealth's objection to his testimony that he told a neighbor that his recent encounters with Mr. Prather made him feel that Mr. Prather was planning to stab him. Hetle argues that the statement is admissible under the state-of-mind exception to the rule against hearsay. *See* Va. R. Evid. 2:803(3) (providing that the following is not excluded by the hearsay rule: "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)"). The circuit court ruled that Hetle's testimony about his own statement was inadmissible, but Hetle could testify to his own state of mind at the time. The circuit court noted that it had allowed Hetle's neighbor to testify to the same statement under the state-of-mind exception. Hetle argues that for the same reason that the neighbor's testimony to the statement was admitted, his own testimony to the statement should have been admitted.

On review of the trial court's decision, this Court seeks "the best and narrowest grounds available" for its decision. *Commonwealth v. White*, 293 Va. 411, 419 (2017) (quoting

- 10 -

*Commonwealth v. Swann*, 290 Va. 194, 196 (2015)). Here, this Court holds that the best and narrowest ground for decision is our conclusion "that the alleged trial court error, if error at all, was harmless as a matter of law." *Id.* Non-constitutional error is harmless if "the error did not influence the jury, or had but slight effect." *Holloman v. Commonwealth*, 65 Va. App. 147, 171 (2015) (quoting *Ramsey v. Commonwealth*, 63 Va. App. 341, 356 (2014)). When excluded testimony is "merely cumulative" of other testimony, its exclusion "could not have affected the jury's determination and, thus, was harmless error." *Smith v. Commonwealth*, 72 Va. App. 523, 545 (2020) (quoting *King v. Cooley*, 274 Va. 374, 380 (2007)). The statement excluded from Hetle's testimony is the same statement to which Hetle's neighbor testified. The neighbor testified that the day before the shooting, Hetle told her that Mr. Prather's recent conduct made Hetle afraid that Mr. Prather would stab him. Because the neighbor testified to the same statement that was excluded from Hetle's testimony, the excluded testimony was merely cumulative of the neighbor's testimony. *See* Va. R. Evid. 2:403 ("Relevant evidence may be excluded if . . . the evidence is needlessly cumulative."). Additionally, on cross-examination, the Commonwealth elicited Hetle's confirmation that "on the day before the shooting . . . you talked to one of your neighbors and you told her you feared for your life . . . ." Since the jury could consider and weigh Hetle's statement to his neighbor, the exclusion of Hetle's testimony to the same statement did not affect the jury's verdict. Therefore, if the circuit court erred in excluding Hetle's cumulative testimony to the statement he made to his neighbor, such error was harmless. *See* Code § 8.01-678 ("When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . for any error committed on the trial.").

### C. Cross-examination about Prior Allegations of Racial Bias

Hetle contends that the circuit court erred in overruling his objection to the Commonwealth's questioning and eliciting testimony from him about prior allegations of racial bias. Hetle argues that the circuit court abused its discretion in permitting cross-examination about an incident twenty years ago on a wholly irrelevant topic. Hetle also argues that the questioning was intended to inflame the jurors' emotions and "to inject an aura of racism into the trial." Op. Br. 15. Hetle claims that the evidence should have been excluded as unfairly prejudicial.

Hetle's argument ignores the fact that Hetle's responses on cross-examination denied most of the allegations implicit in the Commonwealth's questioning about the reprimand he received as a police officer. Although Hetle admitted receiving a written reprimand regarding a traffic stop of an Ethiopian woman, he denied the implicit allegations that he commented on the woman's nationality and threatened her with deportation and other consequences. Thus, there is no evidence of the prejudicial facts suggested by the Commonwealth's questions and, consequently, no erroneous admission of evidence of any prejudicial facts. To the extent that Hetle is arguing a separate point that the Commonwealth's *questioning* about the reprimand itself was unfairly prejudicial, this Court finds no reversible error. Assuming without deciding that the Commonwealth's questioning about the reprimand was itself unfairly prejudicial, this Court finds no reversible error because there is no significant probability that the Commonwealth's questioning affected the verdict given the overwhelming evidence of Hetle's guilt. *See Holmes v. Commonwealth*, 76 Va. App. 34, 59 (2022) ("Non-constitutional error is harmless if other evidence of guilt is so 'overwhelming' and the error so insignificant by comparison that we can conclude the error 'failed to have any "substantial influence" on the verdict.'" (quoting *Dandridge v. Commonwealth*, 72 Va. App. 669, 685 (2021))); *see also* Code § 8.01-678.

*D. Admission of Testimony about Hetle's Use of Racial Slurs*

Hetle contends that the circuit court erred in admitting into evidence his son's testimony that Hetle used racial slurs in reference to Mr. Prather. The circuit court found that this testimony was relevant "on the issue of malice with respect to the charge of murder" and that "the probative value outweighs the prejudice." Hetle argues on appeal that the evidence of his use of racial slurs was unduly prejudicial and should have been excluded under Virginia Rule of Evidence 2:403 ("Relevant evidence may be excluded if . . . the probative value of the evidence is substantially outweighed by . . . the danger of unfair prejudice . . . .").

This Court holds that the circuit court did not abuse its discretion in finding that the danger of unfair prejudice did not substantially outweigh the probative value of the contested evidence. "'[U]nfair prejudice' refers to the tendency of some proof to inflame the passions of the trier of fact, or to invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." *Lee v. Spoden*, 290 Va. 235, 251 (2015). Here, as the circuit court found, Hetle's use of racial slurs in reference to the victim related to the malice element of murder. The circuit court reasonably concluded that the evidence of Hetle's use of racial slurs did not invite the jury to decide the case based on an unrelated factor or on inflamed passions instead of probative evidence. We hold, therefore, that the circuit court did not err in admitting testimony about Hetle's use of racial slurs in reference to the victim.

## CONCLUSION

The circuit court did not err in refusing to remove a juror mid-trial when the juror assured the court that her observation of a trial spectator photographing jurors outside the courthouse would not affect her performance of her duties as a juror in accordance with her instructions and her oath. Additionally, the circuit court's contested evidentiary rulings did not constitute reversible error.

Accordingly, this Court affirms Hetle's convictions for first-degree murder and use of a firearm in the commission of murder.

*Affirmed.*